Argued and submitted September 18, 2020; decision of Court of Appeals reversed, order of circuit court affirmed March 17, 2021

STATE OF OREGON,
*Respondent on Review,*

*v.*

TALON DUANE RAMOZ,
*Petitioner on Review.*

(CC 15CR47950) (CA A163802) (SC S067290)

483 P3d 615

Following a jury trial at which defendant was found guilty of two counts of first-degree rape and two counts of first-degree unlawful sexual penetration, defendant moved for a new trial under ORCP 64 B(1). Defendant argued that, due to a mistake or clerical error, the jury instructions had not included the *mens rea* element to each of the charged crimes—that defendant acted knowingly—and that the omission had prevented defendant from having a fair trial. The trial court agreed and granted the motion. The state appealed, arguing that an instructional error is a legal error to which defendant was required to object during trial and that defendant was not prevented from having a fair trial because the instructional error in this case was harmless. *Held*: (1) Because the omission in the instructions was an "irregularity in the proceedings of the court" under ORCP 64 B(1), defendant was not required to object to, or except to, the error in the jury instructions, instead, the moving party's failure to object was a factor the trial court may consider when deciding whether to exercise its discretion to grant a new trial; (2) a trial court's determination that an error is not harmless is reviewed for legal error; and (3) the instructional error in this case was not harmless.

The decision of the Court of Appeals is reversed. The order of the circuit court is affirmed.

En Banc

On review from the Court of Appeals.*

Anne Fujita Munsey, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Ernest G. Lannet, Chief Defender.

Timothy A. Sylwester, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent on

_____
* On appeal from Jackson County Circuit Court, Timothy Barnack, Judge. 299 Or App 787, 451 P3d 1032 (2019).

review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Kathryn H. Clarke, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

WALTERS, C. J.

The decision of the Court of Appeals is reversed. The order of the circuit court is affirmed.

**WALTERS, C. J.,**

Defendant was charged with two counts of first-degree rape and two counts of first-degree unlawful sexual penetration. When it came time to instruct the jury on those charges, defendant and the state both requested instructions that they expected would correspond to those set out in the Uniform Criminal Jury Instructions. The final jury instructions did not, however, correspond with those uniform instructions; instead, the instructions omitted, in the list of elements the state was required to prove, the *mens rea* elements—that defendant had acted knowingly. Defendant was found guilty on all counts but moved for a new trial under ORCP 64 B(1), alleging that the omission in the instructions was an "[i]rregularity in the proceedings of the court" that prevented him from having a fair trial. The trial court granted defendant's motion, and the state appealed. In a divided, en banc decision, the Court of Appeals reversed. *State v. Ramoz*, 299 Or App 787, 451 P3d 1032 (2019). For the reasons that follow, we conclude that the trial court did not err in ordering a new trial and reverse the decision of the Court of Appeals.

## I.   BACKGROUND

The indictment alleged two counts each of both first-degree rape under ORS 163.375(1)(d) and first-degree unlawful sexual penetration under ORS 163.411(1)(c). One count of each crime alleged that the victim was "incapable of consent by reason of mental incapacitation," and the other count of each crime alleged that the victim was "incapable of consent by reason of physical helplessness." Thus, to prove that defendant was guilty of first-degree rape under ORS 163.375(1)(d), the state had to prove that defendant knowingly[1] had "sexual intercourse" with the victim and

---

[1] The minimum culpable mental state for conduct elements is "knowingly" or "with knowledge." *See* ORS 161.085(7)-(10) (defining "intentionally," "knowingly," "recklessly," and "criminal negligence" mental states). But the "knowingly" mental state does not apply to the element that the victim was "incapable of consent by reason of mental defect, mental incapacitation or physical helplessness." Where the state's theory is that the victim was unable to consent because the victim "is mentally defective, mentally incapacitated or physically helpless, it is an affirmative defense for the defendant to prove that at the time of the alleged offense the defendant did not know of the facts or conditions responsible for the victim's incapacity to consent." ORS 163.325(3).

that she was "incapable of consent by reason of *** mental incapacitation or physical helplessness." To prove that defendant was guilty of first-degree unlawful sexual penetration under ORS 163.411(1)(c), the state had to prove that defendant knowingly "penetrate[d]" the victim's vagina with his finger and "[t]he victim [was] incapable of consent by reason of *** mental incapacitation or physical helplessness."

Defendant was tried by jury. The evidence showed that the victim went to the house of Werner, a friend of both the victim and defendant. While there, the victim consumed champagne and Xanax, eventually "pass[ing] out" on Werner's bed. The victim does not drink often, but on the night in question she drank an entire bottle of champagne and consumed about five or six of Werner's Xanax pills. The victim felt a "body high" during which she "couldn't move anymore." She testified that, at some point, she heard defendant enter Werner's apartment and Werner offer defendant a glass of champagne with Xanax. She fell back asleep, later waking up to someone "slapping [her] butt," but she still could not move. She was too intoxicated to "put it together." Instead, she was simply perceiving that someone had taken her leggings off and that defendant was trying to kiss her. She tried to swing her hand through the air, and in doing, so, realized that her shirt had been taken off. She perceived defendant crawl into the bed with her and put his fingers in her vagina. She did not want him to do that, but she was unable to respond. Eventually, due to the pain she felt after defendant began having sex with her, she regained more consciousness. She began crying, slipped off of the bed, grabbed her keys and phone (but left her shoes), and ran home. Werner's neighbor, Harrop, who was a friend of defendant's, testified that, after the victim ran home crying, he asked defendant what had happened, and defendant admitted having sex with the victim and penetrating her vagina with his fingers. When asked whether defendant was intoxicated when Harrop had spoken with him, Harrop recalled that defendant was "buzzed."

Defendant called a single witness—Meneely—who was qualified as an expert in the field of forensic toxicology. Meneely testified that Xanax was a sedative, and, when mixed with alcohol, it is "severely sedating." Defendant

asked whether a person would still be conscious if a person drank an entire bottle of champagne and then took five to six Xanax pills, and Meneely answered, "no." Meneely also stated that a person who had consumed that amount of alcohol and Xanax would not be able to remember what had happened because sedating medications like Xanax block the formation of memory proteins. Additionally, Meneely concluded that, if a person had consumed as much Xanax and alcohol as the victim testified that she had consumed, the person would not be able to wake up due to "slapping on the buttocks" or "painful sexual intercourse." Meneely testified that, although someone extremely sedated would likely not be able to move, it is possible that the person could perceive what is going on around them.

Before closing arguments, the parties submitted jury instructions. Both parties requested the Uniform Criminal Jury Instructions (uniform instructions) defining the crimes of first-degree rape and first-degree unlawful sexual penetration, as well as the uniform instructions defining the terms "knowingly," "mentally incapacitated," "incapacity to consent," "physically helpless," and "ignorance or mistake as a defense to sexual offenses." Defendant requested those instructions by referring to the number corresponding to the relevant uniform instruction. The state submitted typed instructions that were purportedly identical to the relevant uniform instructions. The parties and the court discussed the instructions but did so off the record.

When the court instructed the jury, it did not give instructions that corresponded with the uniform instructions defining the crimes of first-degree rape and unlawful sexual penetration in all respects. The first sentences of the court's instructions were identical to the first sentences of the uniform instructions. They defined the charged crimes and informed the jury that the law provides that a person commits the charged crimes if the person "knowingly" commits the charged acts. The next part of the court's instructions departed from the uniform instructions. The uniform instructions list all of the elements that the state must prove beyond a reasonable doubt, including that defendant acted knowingly; the court's instructions did not inform the jury that the state must prove defendant's mental state.

Specifically, instead of informing the jury that the state must prove that defendant "knowingly had sexual intercourse," the court told the jury that the state must prove that defendant "had sexual intercourse," and instead of informing the jury that the state must prove that defendant "knowingly penetrated the vagina of [the victim] with an object other than his penis or mouth," the court told the jury that the state must prove that defendant "penetrated the vagina of [the victim] with an object other than his penis or mouth."[2] The trial court read those instructions to the jury and provided the jury with written copies to use during deliberation. Neither party objected. The trial court also instructed the jury that, if it found that defendant was voluntarily intoxicated, it could consider that fact in determining whether defendant acted with the requisite mental state.

After the trial court instructed the jury, the parties presented their closing arguments. The jury retired and found defendant guilty of all charges. On September 30, 2016, the trial court held a sentencing hearing, and, on October 5, 2016, it entered a judgment of conviction.

---

[2] For example, the court's instructions on Count 1 stated:

"Oregon law provides that a person commits the crime of rape in the first degree if the person knowingly has sexual intercourse with another person and is incapable of consent by reason of physical helplessness. In this case, to establish the crime of rape in the first degree (count 1), the state must prove beyond a reasonable doubt the following elements:

"(1)  The act occurred on or about October 24, 2015;

"(2)  Talon Duane Ramoz had sexual intercourse with [the victim]; and

"(3)  [The victim] was incapable of consent by reason of physical helplessness."

If the instructions had matched the Uniform Criminal Jury Instruction for first-degree rape, however, the instructions would have stated:

"Oregon law provides that a person commits the crime of rape in the first degree if the person knowingly has sexual intercourse with another person and the other person was incapable of consent by reason of physical helplessness.

"In this case, to establish the crime of rape in the first degree, the state must prove beyond a reasonable doubt the following elements:

"(1)  The act occurred on or about October 24, 2015;

"(2)  Talon Duane Ramoz *knowingly* had sexual intercourse with [the victim]; and

"(3)  [The victim] was incapable of consent by reason of physical helplessness."

UCrJI 1603 (emphasis added).

Meanwhile, on September 29, defendant filed a motion for a new trial citing, as the basis for the motion, ORCP 64 B(1).[3] Defendant asserted that the jury instructions setting out the elements of first-degree rape and first-degree unlawful sexual penetration "were submitted to the jury without the mental state, effectively making the charges strict liability offenses." That omission, defendant argued, prevented him from receiving a fair trial. Defendant also submitted a sworn affidavit from his trial counsel, who stated that "[t]he state submitted jury instructions that *included* the appropriate mental state, to which I stipulated." (Emphasis in original.) The affidavit explained that, "due to a typographical clerk error, the final version of the jury instructions did not include the mental state."

The court held a hearing on that motion on November 16, 2016. At the hearing, defendant asserted that the erroneous instructions were given as a result of a "clerical error," that was "no one's fault." Defendant recalled that the state and defendant had both submitted requests for jury instructions, that the state had submitted written instructions, and that the parties and the court had discussed the jury instructions off the record. Defendant acknowledged that, in that conversation, he had stipulated to the state's instructions, but he asserted that the state's instructions had "complied with the uniform criminal jury instructions." Defendant declared that, "[f]or whatever reason when the jury instructions *** were given back to us *** the words 'knowingly on all four Counts' were omitted." Defendant asserted that that omission constituted "obvious plain error," and asked the court to "take care of this before it has to head up to the Court of Appeals."

In response, the state did not take the position that the court's instructions were legally correct or that they corresponded to the instructions that either party had requested. Instead, the state countered that the proper way to remedy an error in jury instructions was on appeal and

---

[3] ORS 136.535(1) provides, in relevant part, that "ORCP 64 A, B, and D to G apply to and regulate new trials in criminal actions."

Defendant also moved for a new trial under ORCP 64 B(5), based on the "[i]nsufficiency of the evidence to justify the verdict." Defendant's arguments concerning the sufficiency of the evidence are not before this court.

that what had occurred was not an irregularity as contemplated by ORCP 64 B(1). In addition, the state asserted that nobody "who heard this trial had any *** doubts about what was going on in terms of [defendant's] state of mind" because defendant had admitted to the investigating officer that he had had sex with the victim; defendant's defense was that it had been consensual. According to the state, based on the evidence at trial, "[no] member of that jury could've thought; oh well, I don't know if he did this knowingly but the *** rules don't say that he *** has to have done it knowingly so I'll find him guilty." The state therefore concluded that an appellate court would consider any error to be harmless and argued that the state should have a chance to make that point on appeal.

The trial court rejected the state's argument and granted defendant's motion. The court described the omission in the jury instructions as "plain error," and expressed concerns with the efficiency of waiting for an appeal when, in its view, the Court of Appeals would ultimately reverse the outcome. The court said that it did not "need the Court of Appeals to tell me I made a mistake." The court found that it was responsible for reviewing the instructions to determine that they were correct and for the content of the instructions that it gave. In response to the state's argument about the extent to which the mistaken instructions tended to affect the outcome of the trial, the court reasoned that, because "there was a lot of alcohol involved, *** a lot of Xanax," the word "knowingly" was essential to the instructions. The court reflected that it could be that the jury was not confused by the instructions and instead "gloss[ed] over" the mistake, but, the court said, that was "not something we should ever decide. We just need to give them the correct instructions and let them make those calls."

The state appealed. In the Court of Appeals, the state did not argue that what occurred did not constitute an "irregularity" as that term is used in ORCP 64 B(1). Instead, the state argued that regardless of whether what had occurred was an "irregularity," ORCP 64 B(1) did not give the trial court authority to order a new trial because the error was committed "openly on the record"—so defendant was aware of it and could have objected, but he did

not do so. The state argued that in *Maulding v. Clackamas County*, 278 Or 359, 563 P2d 731 (1977), this court held that, for such an error to constitute grounds for a new trial, a party must object. Similarly, the state argued that, in *State v. Langley*, 214 Or 445, 477, 323 P2d 301, *cert den*, 358 US 826, 79 S Ct 45, 3 L Ed 2d 66 (1958), this court explained that "the rule is that when a party having knowledge of an error or an irregularity during the trial fails to call it to the attention of the court and remains silent, speculating on the result, he is deemed to have waived the error." The state contended that, "for purposes of ORCP 64 B(1), an 'irregularity in the proceedings'" may warrant a new trial only in instances involving "an alleged error that did not occur on the record and the moving party was not otherwise aware of it during trial, and hence was not in a position to raise an objection before verdict."

The state also argued that, even if ORCP 64 B(1) could provide a basis for a new trial, the trial court's order should nevertheless be reversed because any error in the instructions was harmless error. The state asserted that the trial court's instructions were only partially incomplete and that defendant had never denied that he committed the *actus reus* of the charged crimes.

Defendant disputed both the legal and factual premises of the state's argument. He contended that *Maulding* did not control because it was decided based on the predecessor statutes to ORCP 64 B(6) and ORCP 64 G and did not address the predecessor to ORCP 64 B(1), the section of the rule on which he was relying. On the factual question of whether defendant was aware of the error, defendant pointed out that the trial court had implicitly decided that question against the state.

Defendant also pointed out an additional fact. Defendant noted that, contrary to defense counsel's affidavit below, the state's typed instructions were *not* identical to the uniform instructions. The state's typed instructions for the first-degree rape charges matched the uniform instructions for that crime in all respects, but the state's typed instructions for the first-degree unlawful sexual penetration charges did not. The state's instructions on that crime

defined the crime as one in which the defendant must act "knowingly," but omitted that requirement in the itemized list of elements that the state must prove. Then, when the trial court actually instructed the jury, the court not only repeated the error in the typed instructions, the court also compounded that error: When listing the elements that the state must prove, the court omitted the *mens rea* element for both the rape and the unlawful sexual penetration crimes. Defendant argued that the fact that defense counsel had incorrectly related the facts in the earlier affidavit was evidence that defendant had been unaware of the "irregularity" when it occurred.

Finally, in response to the state's argument that any error in instructing the jury was harmless, defendant asserted that the failure to instruct the jury on an element of the crime is never harmless, nor can an error in the instructions concerning an element of the crime charged be cured by the instructions as a whole. *See State v. Brown*, 310 Or 347, 356, 800 P2d 259 (1990) (explaining that, where jury instructions did not tell the jury it needed to find causation element, "neither the sufficiency of the evidence nor the completeness of counsel's arguments concerning that evidence is a substitute for the sufficiency of the instructions"); *State v. Pierce*, 235 Or App 372, 377, 232 P3d 978 (2010) (where portions of instructions added a theory of crime that was not charged in the indictment, the fact that other portions of the instructions were correct did not render the error harmless). Furthermore, defendant argued, the court should defer to the trial court's findings regarding whether the error was harmless. *See Highway Com. v. Kromwall*, 226 Or 235, 238-39, 359 P2d 907 (1961) (because the trial court was "familiar with the atmosphere of the trial and the issues produced by the conflicts in the evidence," this court deferred to the trial court's finding that the instructional error was harmless).

In an en banc decision, the majority of the Court of Appeals accepted the state's argument that defendant was required to object to the instructions at trial and reversed. *Ramoz*, 299 Or App at 789-90. The court framed the question as "whether a trial court may grant a motion for new trial under ORCP 64 B(1) if the court provided jury instructions to which the parties stipulated and did not object, but

the trial court later concludes, post-verdict, that the instructions mistakenly stated the law." *Id.* at 795. To answer that question, the court explained that it was required to "determine the meaning of the phrase 'irregularity in the proceedings of the court' in ORCP 64 B(1)." *Id.* at 797. The court noted that the "precise" question presented, then, was "whether an instructional error can be an irregularity in the proceedings of the court under ORCP 64 B." *Id.* at 798.

The court began its analysis by noting that it was an "unexceptional premise that when a trial court incorrectly instructs a jury, that is legal error." *Id.* at 795. The court noted that a party may move for a new trial under ORCP 64 B(6) based on legal error, but that provision states that the error must have been "'objected to or excepted to by the party making the application.'" *Id.* at 796 (quoting ORCP 64 B(6) (emphasis omitted)). The court explained that ORCP 64 B(6) would not have provided authority to grant a new trial because, not only did defendant not "'object to' or 'except to' any of the instructions when they were read aloud in court and provided to the jury," but defendant also "affirmatively stipulated to two of the instructions on the unlawful penetration charges that were ultimately given to the jury using the same text that defendant stipulated to." *Id.* The court noted that, "at least *in this circumstance* where the party stipulated to some of the instructions and further failed to object or except to all of the instructions, it would render ORCP 64 B(6) meaningless to treat that type of error as an irregularity in the proceeding under ORCP 64 B(1)." *Id.* at 796-97 (emphasis in original).

After determining that, if the facts of this case constituted an "irregularity in the proceedings" under ORCP 64 B(1), it would render ORCP 64 B(6) meaningless, the court turned to the text of ORCP 64 B(1). *Id.* at 797. The court explained that the phrase "irregularity in the proceedings of the court" has been a part of Oregon civil procedure since 1862, so the court turned to dictionaries defining the phrase during that time. *Id.* at 798. The phrase was defined as a "'[d]eviation from *** any common or established rule' or 'deviation from method or order.'" *Id.* (quoting Noah Webster, 1 *An American Dictionary of the English Language*, unpaginated (1828) (alterations in *Ramoz*)). The court determined

that, if a court provides an incorrect jury instruction, it is not "deviating from an established rule, practice, or method in the 'proceedings of the court.'" *Id.* at 799. Instead, it is "resolving a legal issue and then instructing the jury on the law." *Id.* Thus, the majority "decline[d] to adopt a construction of 'irregularity of the proceedings' under ORCP 64 B(1) that would have the effect of opening the door for future litigants to seek a new trial for claimed instructional error that they had either stipulated to or not objected or excepted to." *Id.* at 802. Because the majority concluded that what had occurred was not an "irregularity in the proceedings," the court did not address the state's argument that defendant was not denied a fair trial because the error was harmless.

Six judges dissented. *Id.* at 812. The dissent explained that the majority incorrectly focused on defendant's inattention to the erroneous jury instructions; the proper focus of ORCP 64 B(1), the dissent explained, was on the court's actions and whether those actions were an "irregularity." *Id.* at 805 (Armstrong, J., dissenting). The dissent noted that the trial court had recognized its failure to include a culpable mental state in the instructions, and, the court explained, from the trial court's perspective, that was an irregularity. *Id.* The dissent distinguished between what happened in this case—a "scrivener's" or "clerical" error—and errors that result from the exercise of "judicial function"—the "normal trial practice [of] announcing a *** ruling on a legal question." *Id.* at 806-10. Under that distinction, most instructional errors would not constitute "irregularities" under ORCP 64 B(1) "because most instructional errors involve an exercise of the judicial function." *Id.* at 811. The dissent explained that, because ORCP 64 B(1) was intended to give trial courts authority to correct errors such as the one that occurred in this case, it would have affirmed the trial court's decision. *Id.* at 811-12.

Defendant sought, and we allowed, review.

## II.   THE PARTIES' ARGUMENTS

On review, the parties' arguments do not precisely mirror the differing positions taken by the majority and the dissent in the Court of Appeals. Consequently, rather than setting out defendant's objections to, and the state's

support for, the decision of that court, we find it more helpful to set out the opposing positions presented in our court.

Here, the state argues that the trial court erred in granting defendant's motion for new trial for two reasons. First, the state contends that the trial court erred in granting a new trial under ORCP 64 B(1) because, where a claimed irregularity constitutes an "error in law," ORCP 64 B(6), rather than ORCP 64 B(1), applies and is the exclusive authority for an order permitting a new trial. ORCP 64 B(6) provides a "cause" for a new trial based on an "[e]rror in law occurring during trial," but only when the party seeking the new trial has "objected or excepted to" that error. The state's first argument thus goes as follows: The trial court committed "instructional error," "instructional error" is an "error in law," an "error in law" can constitute a basis for a new trial only if the moving party can demonstrate that he or she objected or excepted to the error, and defendant did not object or except to the court's jury instructions. The state contends, therefore, that properly framed, the first question before us is whether a trial court has authority to grant a new trial under ORCP 64 B(1) when the applicant could have sought a new trial claiming an "error in law" under ORCP 64 B(6), but would be precluded from relief under that section because the applicant did not object or except to the claimed error at trial. The state contends that the answer is no, arguing that subsection (6) of ORCP 64 B is more specific than subsection (1) and therefore controls, that without the imposition of a preservation requirement, subsection (1) would swallow subsection (6) and render it meaningless, and that this court already has decided that a trial court is precluded from granting a new trial for instructional error when the party seeking the order failed to object at trial.

The state's second, alternative, argument is an argument that the Court of Appeals did not reach. The state contends that even if the trial court had authority to grant defendant's motion for new trial despite his failure to object to its instructions, the trial court erred in granting defendant's motion for new trial because the error was harmless. The state explains that Article VII (Amended), section 3, of

the Oregon Constitution sets a threshold that must be met before a trial court can order a new trial and that a trial court is precluded from ordering a new trial when the error on which it relies constitutes harmless error. The state contends that, in this case, the irregularity on which the trial court relied did not meet that threshold and that the trial court erred in determining that it did.

For his part, defendant takes a different view of ORCP 64 B. Defendant begins by arguing that subsection (1) of ORCP 64 B does not include a preservation requirement and that the irregularity that occurred in this case should be analyzed for compliance with that subsection and not for compliance with the requirements of subsection (6). When subsection (1) is invoked, defendant submits, the only limitation on a trial court's authority is that the irregularity must have prevented the moving party from having a fair trial. Defendant acknowledges that, in making that determination, the Oregon Constitution requires a threshold determination that the error on which the trial court relies is prejudicial, but he argues that an appellate court must "defer" to the trial court's decision on that issue. In this case, defendant asserts, we must defer to the trial court's determination that the irregularity which resulted in erroneous jury instructions was prejudicial, and we must conclude that the trial court had authority to grant defendant's motion.

## III.   ANALYSIS

A.   *Did defendant's failure to object or except to court's jury instructions bar the trial court from granting defendant's motion for new trial?*

We begin our analysis with the state's first argument, and, as is our practice, we also begin with the text and context of ORCP 64 B, and its origins.[4]

---

[4] "We interpret Oregon's Rules of Civil Procedure in the same manner in which we interpret Oregon's statutes." *Waddill v. Anchor Hocking, Inc.*, 330 Or 376, 381, 8 P3d 200 (2000), *adh'd to on recons*, 331 Or 595, 18 P3d 1096 (2001). When it comes to Oregon Rules of Civil Procedure, our aim is to determine the intent of the Council on Court Procedures. *Id.* at 382 n 2 (explaining that, "unless the legislature amended the rule at issue in a particular case in a manner that affects the issues in that case, the Council's intent governs the interpretation of the rule"). With that in mind, when we interpret an Oregon Rule of Civil

In 1854, Oregon adopted a law governing the grounds for a new trial based on the law governing new trials in New York. The 1854 Oregon statute stated that:

"The former verdict or other decision may be vacated and a new trial granted on the application of the party aggrieved for any of the following causes, materially affecting the substantial rights of such party:

"1.  Irregularity in the proceedings of the court, jury, or adverse party, or any order of the court, or abuse of discretion by which such party was prevented from having fair trial;

"2.  Misconduct of the jury or prevailing party;

"3.  Accident or surprise which ordinary prudence could not have guarded against;

"4.  Newly discovered evidence, material for the party making the application, which he could not with reasonable diligence have discovered and produced at the trial;

"5.  Excessive damages, appearing to have been given under the influence of passion or prejudice;

"6.  Insufficiency of the evidence to justify the verdict or other decision, or that it is against law;

"7.  Error in law occurring at the trial, and excepted to by the party making the application."

Statutes of Oregon, An Act to Regulate Proceedings in Actions at Law in the Supreme and District Courts, ch 2, tit VII, § 36, p 96 (1854).

The rule has since remained largely unchanged. For example, when the predecessor statutes to ORCP 64 B, *former* ORS 17.610 and *former* ORS 17.630, were enacted in 1953, those statutes mirrored the 1854 law. The first of

---

Procedure, we give primary weight to the text and context of the rule because "there is no more persuasive evidence of intent of the [Council] than the words by which the [Council] undertook to give expression to its wishes." *See State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009) (internal quotation omitted). After examining the text and context, we consider "pertinent legislative history that a party may proffer." *Id.* at 172. Finally, if the Council's intent remains unclear after examining the text, context, and legislative history, only then will this court turn to general maxims of statutory construction. *Id.*

those statutes provided grounds for a party's motion for a new trial:

> "A former judgment may be set aside and a new trial granted on the motion of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:
>
> "(1)   Irregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having a fair trial.
>
> "(2)   Misconduct of the jury or prevailing party.
>
> "(3)   Accident or surprise which ordinary prudence could not have guarded against.
>
> "(4)   Newly discovered evidence, material for the party making the application, which he could not with reasonable diligence have discovered and produced at the trial.
>
> "(5)   Excessive damages, appearing to have been given under the influence of passion or prejudice.
>
> "(6)   Insufficiency of the evidence to justify the verdict or other decision, or that is against law.
>
> "(7)   Error in law occurring at the trial, and excepted to by the party making the application."

*Former* ORS 17.610 (1953). The second of those statutes set out procedural requirements for a court to grant a new trial on its own motion:

> "If a new trial is granted by the court on its own motion, the order shall so state and shall be made within 30 days after the filing of the judgment. Such order shall contain a statement setting forth fully the grounds upon which the order was made, which statement shall be a part of the record in the case. In event an appeal is taken from such an order, the order shall be affirmed only on grounds set forth in the order or because of reversible error affirmatively appearing in the record."

*Former* ORS 17.630 (1953).

Those statutes were eventually adopted as part of the Oregon Rules of Civil Procedure, particularly as ORCP 64—*former* ORS 17.610 became ORCP 64 B, and *former* ORS

17.630 became ORCP 64 G.[5] The only major change that occurred when those statutes were converted into ORCP 64 was that ORCP 64 B contained only six grounds for a new trial—*former* ORS 17.610(5), which set out grounds for a new trial based on excessive damages, was omitted.[6] For our purposes in this case, therefore, ORCP 64 B has remained largely unchanged since the 1850s. ORCP 64 B provides, in full:

> "A former judgment may be set aside and a new trial granted in an action where there has been a trial by jury on the motion of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:
>
> "B(1)   Irregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having fair trial.
>
> "B(2)   Misconduct of the jury or prevailing party.
>
> "B(3)   Accident or surprise which ordinary prudence could not have guarded against.
>
> "B(4)   Newly discovered evidence, material for the party making the application, which such party could not with reasonable diligence have discovered and produced at the trial.
>
> "B(5)   Insufficiency of the evidence to justify the verdict or other decision, or that it is against law.

---

[5]  In fact, ORCP 64 as a whole is based on former statutes. The commentary states:

> "This rule is based upon existing ORS sections. Section 64 A. is based on ORS 17.605. Section 64 B. is based on ORS 17.610. Section 64 C. is based on 17.435, but the language is modified to refer to a case tried without a jury rather than a suit in equity, and the last sentence is new. Sections 64 D. and E. are based on ORS 17.620 and 17.625. Section 64 F. is based on ORS 17.615. Section 64 G. is based on ORS 17.630[.] The last sentence of ORS 17.630 is not included and will remain as a statute as it relates to appellate procedure."

*See Oregon Rules of Civil Procedure, Promulgated by the Council on Court Procedures*, 198-99 (Dec 2, 1978), counciloncourtprocedures.org/Content/Promulgations/1978_original_ORCP_promulgation.pdf (accessed Mar 15, 2021) (comment to ORCP 64).

[6]  From 1979, when the Oregon Rules of Civil Procedure were enacted, to today, ORCP 64 was amended only once. In 2006, ORCP 64 F(2) was added, which specifies the effect that a notice of appeal may have on a party's motion for a new trial.

"B(6)   Error in law occurring at the trial and objected to or excepted to by the party making the application."

ORCP 64 B.

That longstanding text, considered with its context, gives rise to four observations. First, the authority that ORCP 64 B(1) grants is very broad. It permits a trial court to order a new trial in instances in which where there was either an "irregularity in the proceedings of the court, jury or adverse party," or "any order of the court, or abuse of discretion" that prevented the moving party from receiving a fair trial. *See D.C. Thompson and Co. v. Hauge*, 300 Or 651, 656, 717 P2d 1169 (1986) (noting that ORCP 64 B(1) is divided into two subparts—the first part "inquires into any '[i]rregularity in the proceedings of the court, jury or adverse party'" and the second "asserts as grounds for a new trial 'any order of the court, or abuse of discretion'" (quoting ORCP 64 B(1)). As the parties recognize, an "irregularity" is a "[d]eviation from *** any common or established rule; deviation from method or order; as the *irregularity* of proceedings." *See* Noah Webster, 1 *An American Dictionary of the English Language* (unpaginated) (1828) (emphasis in original);[7] *see also Black's Law Dictionary* 656 (2nd ed 1910) (defining "irregularity" a "[v]iolation or nonobservance of established rules and practices").

Second, the causes for which a new trial is permitted are numerous but, to serve as a basis for a new trial, must be specified. ORCP 64 B permits a trial court to grant a new trial on the motion of a party and lists six "causes" on which the trial court can act. ORCP 64 D requires that a moving party specify the "cause" on which the party relies and provides that "no cause of new trial not so stated shall be considered or regarded by the court." ORCP 64 G recognizes that a trial court may grant a new trial on its own initiative and does not limit the grounds on which the trial court may act. ORCP 64 G requires, however, that the trial court state the "grounds upon which the order was made" and act within 30 days.

---

[7] Because the phrase "irregularity in the proceedings" has been a part of Oregon Civil Procedure since 1854, this court looks, in considering its meaning, to dictionary definitions from that time. *State v. Perry*, 336 Or 49, 52, 77 P3d 313 (2003).

Third, each of the "causes" for new trial includes parameters of the trial court's authority to grant a party's motion for new trial. For instance, ORCP 64 B(1) allows a court to grant a new trial for an irregularity in proceedings, but only in circumstances in which the irregularity prevented the moving party from receiving a "fair trial." ORCP 64 B(3) allows a court to grant a new trial where there has been an "[a]ccident or surprise," but only if "ordinary prudence could not have guarded against" it. Similarly, ORCP 64 B(4) allows a trial court to grant a new trial based on "[n]ewly discovered evidence," but only if the party could not "with reasonable diligence have discovered and produced" the evidence at trial. ORCP 64 B(6) allows a trial court to grant a new trial based on an "error in law," but only if the moving party "objected to or excepted to" the error.

Finally, the "causes" for new trial appear to overlap. In this case, for instance, the crux of the parties' dispute is whether the omission of the "knowingly" element constitutes a "cause" for a new trial under ORCP 64 B(1) or ORCP 64 B(6): ORCP 64 B(1) permits a new trial for irregularities in the proceedings of the court, but such an irregularity also could constitute an "error in law" under ORCP 64 B(6). Other provisions of the rule are similar, and it is easy to imagine similar arguments concerning their overlap. For instance, ORCP 64 B(1) permits a new trial for "irregularities in the proceedings of the *** jury or adverse party," but such an irregularity also could constitute "[m]isconduct" by the jury or the prevailing party under ORCP 64 B(2). ORCP 64 B(1) permits a new trial for "orders of the court" that prevent a party "from having fair trial," but such an "order" also could constitute an "error in law" under ORCP 64 B(6). And ORCP 64 B(3) permits a new trial for an "[a]ccident or surprise," but an "accident" or "surprise" also could constitute an "irregularity in the proceedings" under ORCP 64 B(1).

With those observations, we measure the rule's text and context against the state's argument that, in this case, the trial court did not have authority to grant a new trial under ORCP 64 B(1) because defendant did not object or except to the instructions given at trial. First, we consider the requirements set out in the plain text of ORCP B(1) and

whether those requirements are met under these circumstances. It is not difficult to see that the court's instructions were the result of an "irregularity in the court's proceedings," and the state does not contend otherwise. Here, the parties and the court agreed that the uniform instructions should be used to instruct the jury, but due to what the trial court characterized as "a mistake," the court's instructions did not include the required mental state in the section that informed the jury of the elements that the state must prove. In *D.C. Thompson and Co.*, this court considered a similar mistake between a jury's intended verdict and its expression of that verdict to be an "irregularity in the proceedings" as that term is used in ORCP 64 B(1). 300 Or at 656-67.[8] And in *Libbee v. Permanente Clinic*, 269 Or 543, 544-46, 525 P2d 1296 (1974), this court upheld a trial court's order granting a new trial on the basis of an "irregularity in the proceedings," when the trial mistakenly provided the jury with an exhibit that had not been offered or received in evidence. This case evidences a similar deviation from the expected or intended method of proceeding.

Second, we see that subsection (1) of ORCP 64 B does not include the preservation requirement that is found in subsection (6), and the state does not argue that we can read its preservation requirement into subsection (1). This court cannot "insert what has been omitted." ORS 174.010; *see also State v. McNally*, 361 Or 314, 328, 392 P3d 721 (2017) ("It is axiomatic that this court does not insert words into a statute that the legislature chose not to include."). Accordingly, the state's argument is more nuanced. The state argues that we should interpret the subsections of ORCP 64 B as mutually exclusive and hold that, where the court commits an "error in law," subsection (6), rather than subsection (1), applies and controls. The state relies on two rules of construction for that point: The state argues that the specific rule controls the general and that the state's reading of the rule is necessary to give effect to all the rule's provisions. *See* ORS 174.020(2) ("When a general provision and a particular provision are

---

[8] In *D.C. Thompson and Co.*, this court ultimately reversed the trial court's order granting a new trial; not because what occurred was not an "irregularity," but because the juror affidavits and testimony seeking to prove that members of the jury misunderstood the verdict form were inadmissible. 300 Or at 660.

inconsistent, the latter is paramount to the former so that a particular intent controls a general intent that is inconsistent with the particular intent."); ORS 174.010 (explaining that "where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all"). Although the state accurately states those rules of construction, neither is helpful to the state here.

ORS 174.020(2) provides that, when two provisions "are inconsistent," the more specific provision controls. Thus, that rule of construction only applies when there is a conflict or inconsistency in statutory provisions. *See State v. Pearson*, 250 Or 54, 58, 440 P2d 229 (1968) (declining to apply rule that specific statute controls over general because "[t]he two statutes [could] be harmonized"). Here, the subsections of ORCP 64 B can be harmonized if we read them to provide trial courts with expansive, overlapping authority to grant new trials in many different, and overlapping circumstances. Subsection (1) is not necessarily inconsistent with subsection (6). Both provisions may provide routes to a trial court's exercise of authority under the rule.

Similarly, we can read ORCP 64 B to give effect to all its provisions. Subsection (6) grants trial courts authority to act when they may not have authority to act under subsection (1). A trial court does not have authority to grant a motion under subsection (1) unless the irregularity on which it relies denied the applicant a fair trial. Subsection (6) does not include that requirement; instead it requires that the applicant have objected or excepted to an "error in law" during trial. Thus, if an applicant meets the preservation requirement of subsection (6), the trial court has authority to grant a motion for new trial under that subsection, even if the error did not prevent the applicant from receiving a fair trial as required under subsection (1). So, for instance, if a party were to object to a question posed in an opponent's examination of a witness as seeking irrelevant or otherwise inadmissible evidence, an "error in law" in that evidentiary ruling could be the basis for a new trial, even if that error did not deny the objecting party a "fair trial." Of course, ORCP 64 B generally requires that the moving party show that the cause on which that party

relies "materially affect[ed] the substantial rights" of that party. But, as defendant points out, the "fair trial" requirement is not necessarily equivalent to the "materially affecting the substantial rights" requirement, and we can read ORCP 64 B(1) in a way that does not render ORCP 64 B(6) meaningless.

Additionally, the legislature may have had good reason to grant overlapping, rather than mutually exclusive, authority.[9] The legislature may have done so to ensure that the rule would cover the waterfront in laying out the authority that it intended to grant.[10] Although the general rule is that this court construes a statute in a manner to give effect to all its provisions, redundancy is permitted where "there is evidence that that is precisely what the legislature intended." *Baker v. Croslin*, 359 Or 147, 157, 376 P3d 267 (2016). If the legislature intended to permit trial courts to grant new trials for a broad range of mistakes or errors "materially affecting" the "substantial rights" of parties, rather than requiring those parties to file appeals or petitions for post-conviction relief, then the legislature may have intentionally listed all of the kinds of "causes" that could be the basis for such orders, and it may have done so in a way that would not require a trial court to draw fine distinctions between them.

The state contends, however, that such a reading of the rule is foreclosed by this court's prior opinions. The state argues that this court already has held that, absent an objection or exception, a trial court does not have authority to grant a new trial to remedy an instructional error. The

---

[9] As we have explained, "unless the legislature amended the rule [of civil procedure] at issue in a particular case in a manner that affects the issues in that case, the Council [on Court Procedures'] intent governs the interpretation of the rule." *Waddill*, 330 Or at 382 n 2. Here, as noted, ORCP 64 B was largely based on former statutes, but neither party addresses whether the intent behind ORCP 64 B should be that of the Council or that of the legislature. Ultimately, however, resolving that question is unnecessary for our purposes in this case.

[10] As *amicus curiae* Oregon Trial Lawyers Association points out, it has long been recognized by the Court of Appeals that there is the possibility of some overlap under ORCP 64 B. *See McCollum v. Kmart Corporation*, 228 Or App 101, 111, 207 P3d 1200 (2009), *vac'd on other grounds*, 347 Or 101, 226 P3d 703 (2010) (noting that ORCP 64 B is substantially identical to predecessor rules and that the rule "prescribes distinct and yet functionally overlapping 'triggers' for the allowance of a new trial").

state's reliance on our case law is understandable. We have not always been consistent in our analysis of the basis for a party's motion for new trial or for the basis for a court's order granting such a motion. As a result, there are aspects of that case law that may appear to be, or that may be, disjointed. We review that case law now, taking this opportunity to find coherence. In doing so, we ultimately find no basis to conclude that we must read ORCP 64 B to preclude a trial court from ordering a new trial when a party has failed to object or except to an instructional error that constitutes an "irregularity" in the proceedings of the court as that phrase is used in subsection (1) of that rule.

We begin our review with *Langley* and *Maulding*, the two cases on which the state focuses. Both *Langley* and *Maulding* were decided under the predecessor statutes to ORCP 64, *former* ORS 17.610 and *former* ORS 17.630, but, since that statutory language has remained the same, they are helpful in our understanding of ORCP 64 B.

In *Langley*, the defendant moved for a new trial based upon an "irregularity" under *former* ORS 17.610(1)— the "irregularity" was prosecutorial and juror misconduct. *Langley*, 214 Or at 473. The events underlying the claim of misconduct were known by both the defendant and his counsel at the time they occurred, but the defendant made no "objection, motion or other complaint concerning" the misconduct. *Id.* at 475. Instead, the defendant took issue with the misconduct for the first time when he moved for a new trial, and the trial court denied the motion. *Id.* at 475-77. This court rejected the defendant's argument that the trial court erred in doing so, explaining that

"the denial of the motion presents no question for this court's consideration. While the trial judge has a certain discretion, which will not be disturbed on appeal except for its abuse, to grant a new trial, even in the absence of an objection or exception, for irregularities in the proceedings which deprive a party of a fair trial, *Hays v. Herman*, [213 Or 140, 322 P2d 119 (1958)], *State v. Bosch*, 139 Or 150, 154, 7 P2d 554 [(1932)]; *Veazie* [*et al.*] *v. Columbia* [*etc. R.R. Co.*], 111 Or 1, 224 P 1094 (1924)], yet the rule is that when a party having knowledge of an error or an irregularity during the trial fails to call it to the attention of the court

and remains silent, speculating on the result, he is deemed to have waived the error, and the denial of a motion for a new trial based on that ground presents no reviewable question. *Schafer v. Fraser*, 206 Or 446, 489-90, 290 P2d 190 [(1955)]."

*Id.* at 476-77. The state seizes on that portion of *Langley*, arguing that it stands for the proposition that, if the moving party has knowledge of the alleged irregularity, but does not object, the trial court cannot grant that party's motion for a new trial.

The state overreads *Langley*. *Langley* stands for the proposition that a trial court does not abuse its discretion in *denying* a defendant's motion for new trial on the basis that the moving party could have objected to the irregularity when it occurred, but—speculating on the result—did not. That is evidenced by the fact that *Langley* states that a trial court's decision is reviewed for abuse of discretion "even in the absence of an objection or exception," citing *Hays*, *Bosch*, and *Veazie*. *Langley*, 214 Or at 476. Notably, *Hays* and *Veazie* held that a trial court did not abuse its discretion in *granting* a motion for a new trial even though the moving party did not object. *Hays*, 213 Or at 147 (explaining that, had the motion for new trial been denied, "plaintiff's failure to object or move for a mistrial at the time of the emotional display would no doubt have prevented our reversing the judgment," but, "the failure to object is of lesser significance when a new trial has been granted");[11] *Veazie*, 111 Or at 6 (explaining that, although the moving party could have objected to the juror's outburst during the plaintiff's closing argument, an objection at that point in the proceedings would not have saved any expense and would have prevented no greater prejudice, and "the position of the parties would not have changed in any way from that in which they now find themselves," so the trial court did not abuse its discretion in granting motion). *Bosch* went even further, holding that

---

[11] In *Maulding*, this court criticized *Hays*, noting that *Hays* perpetuated the practice of ignoring the specific statutory requirements set out in *former* ORS 17.610 and instead affirming the trial court's order granting a new trial if there was any justification for the court's order. *Maulding*, 278 Or at 364-65. For our purposes here, we simply note that *Langley*'s reliance on *Hays* indicates that it was reviewing the trial court's decision for abuse of discretion.

"where reversible error is committed [during trial] it is the duty of the court to grant a new trial," which is true "even when prejudicial evidence is admitted without objection." *Bosch*, 139 Or at 153.

In *Langley*, this court concededly noted that the "rule is that when a party having knowledge of an error or an irregularity during the trial fails to call it to the attention of the court and remains silent, speculating on the result, he is deemed to have waived the error." 214 Or at 477. But, in doing so, this court was explaining that a party loses the ability to challenge the *denial* of a motion for a new trial on appeal when the party did not object to the irregularity at trial to speculate on the verdict. For the proposition quoted above, *Langley* cites *Schafer*, which stated that point explicitly: "In this jurisdiction it is well settled that an order *denying* a motion for a new trial is not appealable where the grounds of the motion could have been, but were not, urged prior to judgment." *Schafer*, 206 Or at 489 (emphasis added).[12]

Moreover, immediately after stating that a party who fails to call an error or irregularity to the trial court's attention waives the error, the court in *Langley* said that there is an "exception" to that rule where an error "injuriously affected a party's right to a fair trial." *Langley*, 214 Or at 477. By recognizing that "exception," the court indicated that a trial court has authority to grant a new trial when an unpreserved irregularity denied the moving party a fair trial.[13] Reading *Langley* as a whole, it stands for the proposition that a trial court has discretion to deny a moving

[12] *Langley* also cited *State v. Foot You*, 24 Or 61, 70, 32 P 1031, *reh'g den*, 24 Or 61, 33 P 537 (1893), in which the court said that "[i]t has been the constant and uninterrupted practice of this court," that "a motion to set aside a verdict, or for a new trial, for insufficiency of the evidence, in either a criminal or civil case, [is] addressed to the sound discretion of the trial court." The court also said that a trial court's ruling on a motion for a new trial "cannot be assigned as error in this court on appeal." *Id.* We do not understand that case to foreclose an appeal, but to explain that, given the trial court's discretion, such a challenge will rarely be successful.

[13] The court incorrectly described that authority as an "exception" because a trial court cannot, under ORCP 64 B(1), and could not, under the predecessor to ORCP 64 B(1), grant a new trial unless the irregularity prevented the moving party from having a "fair trial."

party's motion for a new trial on the basis that that party could have objected to the irregularity when it occurred, but chose not to do so. *See id.* at 487 ("A careful examination of the entire record fails to discover anything that would enable this court to say that the circuit court abused its discretion in denying the motion for a new trial.").

*Maulding* also is not as helpful to the state as it asserts. In *Maulding*, the plaintiff filed a personal injury action against Clackamas County. *Maulding*, 278 Or at 361. At trial, the plaintiff requested the uniform instruction on comparative negligence. *Id.* That instruction stated that the plaintiff could only recover if the defendant's negligence was greater than the plaintiff's negligence. *Id.* The court instructed the jury according to the plaintiff's requested instruction. *Id.* During deliberation, the jury asked the trial court what it should do if it found that the plaintiff was equally negligent. *Id.* The trial court answered that if the jury found that the parties were equally negligent, the plaintiff could not recover. *Id.* The plaintiff did not object, and the jury returned a verdict for the defendant. *Id.*

Unbeknownst to the parties and the court, the instructions that were given to the jury were incorrect— the legislature had changed the law to provide that, where the parties were found equally negligent, a plaintiff can recover one-half his or her damages. *Id.* That change had become effective approximately two weeks before trial. *Id.* The plaintiff's attorney realized the change in the law after the jury had returned its verdict, so the plaintiff moved for a new trial on the grounds that the instruction was "erroneous because of the recent change in the law." *Id.* The trial court granted the plaintiff's motion and ordered a new trial, and the defendant appealed. *Id.*

This court began by noting that there were two statutes which relate to the granting of a new trial by the trial court—the statute pertaining to orders on the court's own initiative and the statute pertaining to orders requested by a party. *Id.* at 362 (citing *former* ORS 17.610 (1977) and *former* ORS 17.630 (1977). In *Maulding*, the ground the plaintiff asserted for a new trial was under *former* ORS 17.610(7), based on an "[e]rror in law occurring at the trial,

and excepted to by the party making the application."[14] *Id.* at 361-62. The defendant argued that ORS 17.610(7) did not provide a basis for a new trial because the plaintiff had not objected to the instructions. *Id.* at 361.

This court agreed, overruling an earlier case— *Correia v. Bennett and Johnson et ux.*, 199 Or 374, 261 P2d 851 (1953). *Maulding*, 278 Or at 365-66. In *Correia*, the defendant had sought a new trial based on instructions which had incorrectly "overemphasized" a particular aspect of the case. *Correia*, 199 Or at 381. The defendant had not objected to those instructions, but, in *Correia*, this court held that an objection or exception was unnecessary: "[W]hether excepted to or not, [an error sufficient to cause reversal on appeal] may form the ground of a motion for a new trial." *Id.* at 382.

In *Maulding*, this court noted that *Correia* and its progeny had failed to distinguish between the two different statutes that governed new trials. The correct rule, we said, was that found in Chief Justice O'Connell's dissent in *Beglau v. Albertus*, 272 Or 170, 190, 536 P2d 1251 (1975)— that a new trial may be granted only when the requisites of the particular statute at issue are satisfied. *Beglau*, 272 Or at 190. In *Maulding*, the court analyzed the plaintiff's motion under *former* ORS 17.610(7), and not under *former* ORS 17.630, and concluded that the court's statement in *Correia* was clearly incorrect under the former, "for it is directly contrary to ORS 17.610(7), which requires that an exception have been taken." *Maulding*, 278 Or at 363.

Thus, *Maulding* held that a trial court's exercise of its discretion, and this court's review of the trial court's decision, must be rooted in a specific statutory ground authorizing a new trial, but it did not hold that *former* ORS 17.610(7), now ORCP 64 B(6), is the *only* cause for which a court may grant a party's motion for new trial when the court commits a mistake that can be characterized as an "error in law." *Maulding* reasoned that conflating the two statutes—*former* ORS 17.610 and *former* ORS 17.630—would "establish a basis

---

[14] The trial court could not have granted a new trial under *former* ORS 17.630 because the order granting the new trial was not entered within 30 days of the judgment. *Maulding*, 278 Or at 366.

for new trial order which is so broad that is would swallow up *the existing statutory categories*," and it gave effect to the terms of the applicable statute—ORS 17.610(7)—that expressly required preservation. *Maulding*, 278 Or at 366 (emphasis added). But *Maulding* did not reason that, if another subsection of *former* ORS 17.610 that did not expressly require preservation had been invoked, the requirements of *former* ORS 17.610(7) would nevertheless control. In fact, *Maulding* does not quarrel with the idea that if the court had timely acted on its own motion, as permitted by *former* ORS 17.630, which did not require preservation, it could have done so. Thus, we understand *Maulding* to require that a court consider the asserted basis for an order for new trial and meet its dictates.

That narrower reading of *Maulding* is supported by this court's decision in *Arena v. Gingrich*, 305 Or 1, 748 P2d 547 (1988). There, the plaintiff had moved for new trial based on the insufficiency of the evidence under ORCP 64 B(5). *Id.* at 8 n 1. The trial court had denied the plaintiff's motion, and the plaintiff had appealed, assigning error to that ruling. *Id.* at 7. The Court of Appeals declined to consider that assignment of error, citing its decision in *Barrett v. Warrington*, 60 Or App 406, 653 P2d 1020 (1982) (per curiam), which had in turn, without explanation, cited *Maulding* and had held that the issue of "insufficient evidence to support the verdict" could not "be raised for the first time in a post-trial motion." *Barrett*, 60 Or App 406. In *Arena*, this court explained that *Maulding* provided no support for the Court of Appeals' conclusion because *Maulding* was based on the predecessor to ORCP 64 B(6), while *Arena* was based on ORCP 64 B(5). *Arena*, 305 Or at 8 n 1. Nonetheless, we agreed with the result that the court had reached: The trial court did not abuse its discretion in *denying* the plaintiff's motion for new trial. *Id.* at 8. *Arena* confirms that *Maulding* does not affirmatively decide the question presented here,[15]

---

[15] This court also did not decide the issue in *Bennett v. Farmers Ins. Co.*, 332 Or 138, 26 P3d 785 (2001). There, the trial court granted the defendant's motion for a new trial under ORCP 64 B(6), and the issue before us was "what constitutes a sufficient objection or exception under ORCP 64 B(6) when the asserted error of law is an error in the jury instructions." *Id.* at 152.

Finally, our more recent decision in *State v. Sundberg*, 349 Or 608, 247 P3d 1213 (2011), also does not decide the question that faces us in this case.

and *Arena* is consistent with *Langley* in its emphasis on the standard by which we review an order denying a motion for new trial, which is for abuse of discretion.

In summary, *Langley*, *Maulding*, and *Arena* show that, where the basis for a party's motion for new trial is an "error in law" under ORCP 64 B(6), the moving party must have objected or excepted to that error and that the party's failure to do so precludes the court from granting the motion. But those cases do not establish that, where the basis for the party's motion is an irregularity in the proceedings under ORCP 64 B(1), the trial court is precluded from acting. Rather, they are consistent with a construction of ORCP 64 B(1) that permits a trial court to consider the moving party's failure to object or except to the irregularity when it decides whether to exercise its discretion to grant a motion for new trial. Put differently, a trial court may consider the moving party's failure to object to an irregularity, and it may deny a motion for a new trial on that basis, but the moving party's failure to object to an irregularity does not preclude a trial court from granting the party's motion under ORCP 64 B(1).

That construction of ORCP 64 B(1) also is consistent with other related policies, rules, and statutes that

---

In *Sundberg*, the defendant moved for a new trial on the ground that empaneling an anonymous jury was a "jury irregularit[y]." *Id.* at 613. The trial court denied the defendant's motion, and the Court of Appeals affirmed. *Id.* The Court of Appeals concluded that "defendant had waived any right to a new trial based on jury irregularities by not objecting before the jury returned a guilty verdict." *Id.* This court granted review and began by analyzing whether defendant preserved his argument that the trial court violated Article I, section 11, when it empaneled an anonymous jury. *Id.* at 613-14. In arguing that the issue was not preserved, the state made a similar argument as it does in this case—that, under *Maulding*, where the asserted ground for a new trial is something that resulted in legal error, even if what occurred was also an irregularity, the moving party is required to object at trial. In response to that argument, the defendant did not assert, as defendant does in this case, that no such requirement exists. Instead, the defendant asserted that he had, in fact, preserved his argument. This court agreed that the defendant had preserved his argument, and it therefore did not address whether the issue would be properly before the court if the defendant had not done so. *Id.* Because the defendant in *Sundberg* did not make the argument that defendant makes here, we do not read *Sundberg* to bar our interpretation of ORCP 64 B. *See State v. Pittman*, 367 Or 498, 518 n 10, 479 P3d 1028 (2021) (noting that, because the defendant in prior case did not make the argument that the defendant in *Pittman* had made, this court "had no occasion to address" the issue and therefore considered it afresh).

allow courts to remedy errors that may occur during trial. For instance, appellate courts have discretion in deciding whether to review an unpreserved claim of error, and consider, among other factors, "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention, and whether the policies behind the rule requiring preservation of error have been served in the case in another way." *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991). A party's failure to preserve a claim in the trial court does not bar an appellate court from reversing the trial court judgment and ordering a new trial.

Similarly, Oregon's post-conviction statutes provide authority to grant a criminal defendant a new trial after conviction when there was a "substantial denial" of the defendant's constitutional rights, and that authority includes instances in which the defendant's counsel fails to take issue with that denial during the original trial. *See, e.g.*, ORS 138.520 (relief under post-conviction statutes can include "new trial"); ORS 138.530 (post-conviction relief may be granted where petitioner establishes "[a] substantial denial in the proceedings *** of a petitioner's" constitutional rights); *North v. Cupp*, 254 Or 451, 459, 461 P2d 271 (1969) (construing "substantial denial" standard in ORS 138.530 as requiring that criminal defendant's trial counsel serve in "good faith," noting that client is entitled to a "fair trial, not a perfect one" (internal quotation omitted)).

An interpretation of ORCP 64 B(1) that permits, but does not require, a trial court to act in the absence of an objection is consistent with the legislature's determination that such a party may seek a new trial on appeal or in post-conviction proceedings. *See* ORS 138.540(1) (providing that post-conviction relief does not "replace or supersede the motion for new trial *** or direct appellate review"). It is also consistent with ORCP 1 B, which directs this court to construe the Oregon Rules of Civil Procedure "to secure just, speedy, and inexpensive determination of every action."

Considering the text of ORCP 64 B(1) in context with the intended purpose of ORCP 64 B, our prior case law,

and with other rules permitting courts to remedy errors that occurred during trial, we construe ORCP 64 B(1) to provide trial courts with authority to grant a motion for new trial even when the moving party did not object to the irregularity that is the basis for the motion. That the text of ORCP 64 B(1) does not include a preservation requirement is a difficult hurdle to overcome, and the state does not persuade us that the legislature intended to impose such a requirement. The legislature's intent to allow trial courts broad authority is evident in the fact that ORCP 64 B sets out a broad range of "causes" authorizing a court to grant a new trial on motion of a party. It is also evident in the fact that ORCP 64 G does not limit the causes on which the court can act when it does so on its own initiative. When an "irregularity in the proceedings of the court" denies a party a fair trial, the legislature has an interest in granting trial courts authority to remedy that wrong; parties and our judicial system benefit when the costs and delay occasioned by appeal or post-conviction proceedings can be avoided. We conclude, therefore, that the legislature intended that trial courts have authority under ORCP 64 B(1) to grant a new trial where an irregularity prevented the moving party from having a fair trial, even when the moving party does not object to the irregularity during trial. That said, we nevertheless understand that trial courts may well hesitate to grant such motions when the irregularity could have been avoided had the moving party spoken up earlier. As noted, a trial court may consider a party's failure to object when it is deciding whether to exercise its discretion to order a new trial. But, when a court chooses to take responsibility for an irregularity that deprived a party of a fair trial, we conclude that the legislature did not intend to preclude the court from providing an immediate remedy. For all the reasons discussed, we reject the state's argument that the trial court was precluded from granting defendant's motion for new trial under ORCP 64 B(1) because defendant did not object to the court's instructions at trial.[16]

---

[16] We understand that the state now argues that defendant stipulated to the written instructions that the state submitted and that that "waiver" precluded the court from acting, at least as to the charges that were decided based on those stipulated instructions. There are a number of problems with that argument. First, when the trial court made its ruling on defendant's motion for a new trial,

B.   *Did the irregularity constitute harmless error?*

We turn, then, to the state's alternative argument: Even if defendant's failure to raise an objection at trial did not preclude the trial court from granting defendant's motion, the court erred in doing so because the omission in the court's jury instructions constituted "harmless error." In making that argument, the state assumes, and defendant does not dispute, that if the omission in the court's instructions was "harmless error," then the omission did not reach the threshold necessary to a determination that it deprived defendant of a "fair trial" under ORCP 64 B(1). That assumption is based on this court's holdings that Article VII (Amended), section 3, of the Oregon Constitution limits a trial court's ability to order a new trial. In *Beglau*, for example, we said that it is "fundamental that a new trial may be ordered by a trial court only for prejudicial error," which "has been the rule since 1910 when Art VII, § 3, was added to the Constitution." *Beglau*, 272 Or at 180, 180 n 2; *see also Timmins v. Hale*, 122 Or 24, 43-44, 256 P 770 (1927) (noting that Article VII (Amended), section 3, of the Oregon Constitution limits the trial court's ability to order a new trial). Thus, the state's argument begins from an understanding that prejudicial, nonharmless, error is a threshold that a party must meet to demonstrate that the party was denied a fair trial and leaves to another day the question whether something beyond harmless error is necessary to deprive a defendant of a fair trail. We agree with that premise.

As framed, the parties pose two questions for our determination: The first is what standard of review an appellate court should apply in evaluating whether the error

---

it had before it an affidavit from defendant stating that the state's typed instructions were correct and in accord with the Uniform Criminal Jury Instructions, and the state did not dispute that affidavit. Second, the trial court found that it was responsible for the incorrect instructions, and we cannot decide the facts differently than did the trial court. *State v. Cunningham*, 337 Or 528, 537, 99 P3d 271 (2004) (a trial court's preliminary factual determinations are reviewed to determine if there is "any evidence" to support that ruling). Third, the state did not make the argument that it makes in this court to the trial court. If the state had made the argument that the mistake was at least partially the state's fault, and that defendant had stipulated to the mistake at least as to part of the instructions, then the trial court could have considered that fact when it decided whether to exercise its discretion to grant defendant's motion.

on which a trial court relied in granting a new trial constituted "harmless error," and the second is whether that standard was met here. As to the first question, the state contends that our review is for legal error, while defendant contends that we must "defer" to the trial court's finding of prejudice. Defendant notes that in *Clark v. Fazio et al.*, 191 Or 522, 528-29, 230 P2d 553 (1951), this court explained:

> "Where a new trial has been ordered by a trial court for error committed, whether on a motion of a party therefor, or on its own motion, this court on appeal from such order will not ordinarily determine whether, in our opinion, the error was prejudicial. We will make such determination only in the presence of exceptional circumstances, as where the error is insignificant or clearly not prejudicial. This is true because we recognize the fact that the trial judge is in much better position to judge whether or not error was prejudicial in the particular case before him than are we, confined as we are to a consideration of a cold, printed record."

This court reiterated that point in *Kromwall*. There, the trial court ordered a new trial based on instructional error. *Kromwall*, 226 Or at 236-37. The state argued that the error was "nonprejudicial," and therefore, a new trial should not have been awarded. *Id.* at 237. This court rejected that argument, explaining that

> "[t]he trial judge evidently was satisfied to that effect when he ordered a new trial, for he would not have sustained the defendant's motion unless he believed that the erroneous instruction had prejudiced the defendant. The trial judge was familiar with the atmosphere of the trial and with the issues produced by the conflicts in the evidence. He was in a better position than we are to have known the effect upon the issues of the instructions which he gave. Since he ordered a new trial he manifestly believed that his challenged instruction was not only erroneous but also prejudicial. We defer to his views."

*Id.* at 238-39.

In the cases that defendant cites, this court was correct in its observations that, in some ways, a trial court is in a better position than we are to assess the effect that an error may have on a trial. This court does not have the benefit of seeing the trial in person; we must review the

record on paper. And we cannot set aside a trial court's factual findings when they are supported by the evidence. *State v. Johnson*, 335 Or 511, 523, 73 P3d 282 (2003) ("It is a familiar doctrine that we are bound by a trial court's findings of fact, if there is evidence in the record to support them."). But, when we consider whether a trial court's legal ruling was permissible, we make that call without "deference" to the trial court's views.[17] And when we determine whether a legal ruling was permissible, we apply either an "abuse of discretion" or a "legal error" standard of review. *State v. Iseli*, 366 Or 151, 161, 458 P3d 653 (2020). We apply an abuse of discretion standard when "application of the appropriate legal principles would permit more than one legally correct outcome," but, when there is "'only one legally correct outcome,' [an] appellate court must determine whether the trial court erred as a matter of law." *Id.* (quoting *State v. Cunningham*, 337 Or 528, 536, 99 P3d 271 (2004)).

When this court reviews a decision by the Court of Appeals determining that a trial court's error was or was not "harmless," we review for "legal error" and not "abuse of discretion." In *State v. Payne*, 366 Or 588, 608-09, 468 P3d 445 (2020), for example, we reviewed the Court of Appeals decision, *State v. Payne*, 298 Or App 438, 442, 447 P3d 71 (2019), in which that court concluded that the trial court's refusal to give the witness-false-in-part instruction to the jury was harmless error, because that instruction tells the jury "what it is already free to do." We reversed, not because the Court of Appeals "abused its discretion" in determining the error was harmless, but because we concluded that, under Article VII (Amended), section 3, of the Oregon Constitution, the error was not harmless as a matter of law. *Payne*, 366 Or at 609. We do not defer to Court of Appeals' conclusions as to the harmlessness of an error because application of the harmless-error test permits only one legally correct outcome—an error is either harmless, or it is not. The same then, should be true when it is the trial court, and not the

---

[17] Thus, to the extent that *Clark* and *Kromwall* stand for the proposition that the determination of harmless error is purely a matter of "discretion," or that this court should "defer" to the trial court's conclusion as to harmlessness, those decisions are no longer good law. To the extent that *Clark* and *Kromwall* may be read to stand for the proposition that this court will defer to the factual findings that underlie a legal determination as to harmlessness, we adhere to them.

Court of Appeals, that must decide the issue of whether a trial court error was prejudicial. Accordingly, when a trial court's decision to grant a new trial comes to us with an argument that the trial court erred because the irregularity on which it relied constituted harmless error, we neither "defer" to the trial court's decision nor review it for abuse of discretion; rather, we review the trial court's conclusion as to whether an error was harmless for errors of law.

To clarify, we do not mean to imply that we will never review a trial court's order granting a motion for new trial for abuse of discretion. Questions of statutory construction and a trial court's authority to act, such as whether the circumstances presented constitute a "cause" for new trial under ORCP 64 B, are questions of law. *State v. Thompson*, 328 Or 248, 256-57, 971 P2d 879 (1999) ("A trial court's interpretation of a statute is reviewed for legal error. Therefore, we review a trial court's determination that the state met the statutory requirements for joinder of charges for legal error." (Internal citation omitted.)). But, if the trial court has authority to act, or, said another way, if the parameters of one of the subsections of ORCP 64 B are met, then the court has discretion to grant or deny a motion for a new trial and our review would be for abuse of discretion. *See* ORCP 64 B (explaining that "[a] former judgment *may* be set aside and a new trial granted" upon the causes listed in the subsections of ORCP 64 B (emphasis added)); *Langley*, 214 Or at 487 (reviewing trial court order denying motion for new trial for abuse of discretion).

In this case, the trial court granted defendant's motion for new trial under ORCP 64 B(1), and, in doing so, made an implicit determination that the parameters of the rule, including the threshold requirement that the error on which it relied was prejudicial, were met. We review the determination of whether the error was harmless for legal error, and we proceed now to that review.

In determining whether an error is harmless, this court analyzes whether there was "little likelihood" that the error affected the verdict. *Payne*, 366 Or at 609. Instructional error is not harmless if it "'probably created an erroneous impression of the law' in the minds of the jury

and 'if that erroneous impression may have affected the outcome of the case.'" *Ossanna v. Nike, Inc.*, 365 Or 196, 219, 445 P3d 281 (2019) (quoting *Hernandez v. Barbo Machinery Co.*, 327 Or 99, 106-07, 957 P2d 147 (1998)).  In making that determination, we consider "'the instructions as a whole and in the context of the evidence and record at trial, including the parties' theories of the case with respect to the various charges and defenses at issue.'" *Payne*, 366 Or at 609 (quoting *State v. Ashkins*, 357 Or 642, 660, 357 P3d 490 (2019)).

Here, the state begins by reminding us that, in its description of the crime, the trial court informed the jury that it had to find that defendant acted knowingly. Consequently, the state asserts, the instructions as a whole were not prejudicial. Further, the state argues, the evidence showed that defendant had admitted that he had sexual intercourse with the victim and that he had penetrated the vagina of the victim with an object other than his penis or mouth. The state contends that defendant's "only defense to the charges was that the victim was awake and competent and that she had consented to that activity," that defendant had expressly acknowledged that there was no issue as to whether those acts occurred, and that defendant had not argued that he was too intoxicated to know what he was doing. Finally, the state contends that it made the issues and the elements clear to the jury in its closing argument. The state began its closing argument by noting that defendant was "not contesting *** the fact that he penetrated [the victim] *** in the ways that are charged." Instead, the state noted, the "crux of the defense" was that the victim had consented. The state then "point[ed] out" some of the more applicable instructions in the case. The state noted that the jury had been instructed on involuntary intoxication as a defense. The state explained that the jury could consider defendant's voluntary intoxication "in making your decision about whether the defendant had the mental state that is required for commission of this offense." The state noted that the required mental state was "knowingly," so "for this to be a defense it would have to mean he did not know what he was doing. He did not know that he was penetrating her. He did not know he was having sex with her." That, the state concluded, was "non-sensible."

Defendant disagrees with the state's characterization of the evidence and his position at trial. He contends that the record shows that he ingested some alcohol and Xanax on the night in question, and he points out that, in his closing, defendant stated, "I think that everybody would probably agree when you mix alcohol, drugs, young people, partying; there's going to be drama." Defendant also asserts that, because the jury was not told that the state had to prove an element of the crime—that defendant acted knowingly—the error could not be harmless.

On that latter point, defendant points out that this court has said that a jury must be instructed on the elements of a crime and that, when it is not, "neither the sufficiency of the evidence nor the completeness of counsel's arguments concerning that evidence is a substitute for the sufficiency of the instructions." *Brown*, 310 Or at 356. In *Brown*, the jury was not instructed that it had to find a causal connection between the defendant's knowledge that the victim was to be a witness against him and the defendant's decision to kill her. *Id.* The state argued that error was harmless because there was sufficient evidence to establish that element and the state had emphasized causation during its closing argument. *Id.* The court, however, had instructed the jury that the parties' closing arguments were not evidence and that the jury should apply the facts as it remembered them to the instructions the court provided. *Id.* This court concluded that the court's failure to provide an instruction on causation was not harmless. *Id.* Similarly, this court has explained that a prosecutor's arguments are "not a legally sufficient substitute for necessary jury instructions." *State v. Lotches*, 331 Or 455, 469, 17 P3d 1045 (2000), *cert den*, 534 US 833 (2001).

The state distinguishes *Brown* and *Lotches* by noting that, in those cases, an instruction that should have been given was omitted in its entirety. The state is correct in that regard, but we are not convinced that that distinction matters here. Although the court's instructions did describe the charged crimes as requiring evidence that defendant acted knowingly, they did not articulate that requirement in the list of the elements that the state must prove beyond a reasonable doubt. As a result, although the instructions

provided complete general definitions of the charged crimes, the instructions did not inform the jury that the state must prove those elements beyond a reasonable doubt. The state is correct that we must look to the instructions as a whole, and we agree that examining a particular omission in isolation can be misleading. But here, the two different parts of the instructions could be viewed as conflicting. When it described the relevant crimes, the court told the jury that defendant had to have acted knowingly, but when it told the jury the elements that the state must prove, it omitted that requirement. The court also led the jury astray when it instructed them that the state must prove certain elements of a crime but not that it must prove other essential elements—the *mens rea* of the crimes. Where an instruction is "equally capable of a correct or an incorrect statement of the law," then there is a likelihood that the error affected the verdict. *See Fairbrother v. Rinker*, 274 Or 525, 529-30, 547 P2d 605 (1976) (explaining that, although instructions could be interpreted as conveying the law correctly, "the instruction would still be prejudicial and reversible error if it can also be interpreted to bear the meaning which plaintiff attributes to it").

We also are not convinced that defendant's mental state was not an issue in the case. Defendant did not expressly admit that he knowingly had sexual intercourse with the victim, nor did he expressly admit that he knowingly penetrated the victim's vagina with his finger. During closing, defendant acknowledged that there had been "sexual activity between two young people," and that defendant had "never denied that he penetrated [the victim's] vagina with his fingers" and had "never denied that he had sexual intercourse." Defendant did not, however, concede that he did so *knowingly*. Defendant argued that what had occurred was consensual, but, in doing so, defendant's aim was to counter the state's evidence that the victim was incapable of consent by reason of mental incapacitation or physical helplessness, not to concede an element of the crime.

Furthermore, although defendant did not expressly focus on the issue of his knowledge, the state still had the burden to prove that element beyond a reasonable doubt. To that question, the jury was told that it could "consider

evidence of voluntary intoxication in making your decision whether the defendant had the mental state that is required for the commission of the charged," but not what mental state was required or that the state had to prove it. Thus, if the jury found that defendant was voluntarily intoxicated, it did not have the benefit of an instruction that fully explained how that factual finding should be considered in deciding whether the state had met its burden of proof.

The state had the burden to prove that defendant *knowingly* committed the *actus reus* of each of the charged crimes. Because the jury instructions could have indicated that the state need not prove, and the jury need not find, the *mens rea* element of each of the charged crimes, the error was not harmless and the trial court did not err in so concluding.

## IV.   CONCLUSION

In summary, the trial court did not err in granting defendant's motion for new trial. Defendant's failure to object to the irregularity in the proceedings did not preclude the court from considering defendant's motion, and the trial court did not err in concluding that its instructions prevented defendant from having a fair trial.

The decision of the Court of Appeals is reversed. The order of the circuit court is affirmed.