360 August 14, 2024 No. 566

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

DEREK MITCHELL SHINE,
*Defendant-Appellant.*

Washington County Circuit Court
19CR42716; A178033

Andrew Erwin, Judge.

Argued and submitted January 24, 2024.

Zachary Lovett Mazer, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Patrick M. Ebbett, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

JACQUOT, J.

Reversed and remanded.

**JACQUOT, J.**

Defendant was convicted by a jury of multiple sex crimes against a child. In his sixth assignment of error, defendant argues that the trial court erred by refusing to read aloud all of the jury instructions at the end of trial. We agree that the trial court erred in failing to read aloud the instructions at the end of trial, and that error was not harmless. Therefore, we reverse defendant's convictions and remand for a new trial.

Defendant also raises various other assignments of error which, having determined that we must reverse and remand on his sixth assignment of error, we do not reach. In the first, he argues that the trial court erred by precluding him from impeaching a witness's opinion statement. In the second, third, and fourth, he argues that the court erred by admitting certain evidence under OEC 404(4) and OEC 403. In the fifth, he assigns error to the court's refusal to give the witness-false-in-part jury instruction. In the seventh, defendant argues that the trial court erred when it overruled his objection to a statement that the prosecutor made in closing arguments that he contends constituted burden shifting, and, finally, in the eighth assignment, defendant argues that the court plainly erred by permitting the prosecutor to make other statements in closing arguments that he contends misstated the jury's function and the burden of proof.[1]

In light of our disposition on the sixth assignment of error, and the Supreme Court's recent decision in *State v. Davis*, 372 Or 618, ___ P3d ___ (2024), we do not reach assignments two, three, and four, which allows the parties to argue under the new standard upon remand. The remaining assignments relate to events that occurred during the trial and, because they may not reoccur on remand, we do not reach them.

We begin—and end—with defendant's sixth assignment of error, challenging the trial court's failure to reread some jury instructions aloud before closing arguments. At the beginning of defendant's trial and prior to jury selection,

---

[1] Defendant raised six assignments of error in his opening brief and then two supplemental assignments in a supplemental brief filed after argument in the case.

the trial court informed the parties that its practice is to provide the jury with "procedural" but not "substantive" instructions up front, and that it provides the substantive instructions before closing arguments. That way, the court explained, rather than the jury listening to the court "droning on for the next hour on instructions" at the end of the trial, during closing arguments the attorneys can simply point to a page of the instructions when referencing the information for the jury. As procedural instructions, it identified "from, you know, functions of the Court and jury, circumstantial evidence, proof beyond a reasonable doubt, all the way through, you know, evaluating witnesses' testimony."

After the jury was selected and before opening statements, the court provided the jury with written copies of those instructions and invited the jurors to read along to themselves or just to listen, "[h]owever you process the information." The court then read aloud to the jury the standard preliminary instructions, including the precautionary instructions and functions of court and jury, along with the standard instructions on the presumption of innocence and proof beyond a reasonable doubt, defendant's statements, defendant not testifying, evaluating witness testimony, inferences, direct and circumstantial evidence, and the definition of "knowingly and with knowledge." The court informed the jury that, at the conclusion of the evidence, it would instruct the jury on the law that applied to this case.

A week later, at the end of the trial and prior to delivering final jury instructions and closing arguments, the parties and court discussed the final instructions. The court informed the parties that it would not reread the instructions it had read to the jury at the beginning of trial, pages one through five, but would include them in the final written instructions because of the length of time since the jury had received the instructions. The prosecuting attorney requested that the court review which instructions were included in the first five pages. Defense counsel clarified with the court that it did not plan to reread pages four and five, which included the instructions on the presumption of innocence and proof beyond a reasonable doubt, defendant's statements, defendant not testifying, evaluating witness

testimony, inferences, direct and circumstantial evidence, and the definition of "knowingly and with knowledge." Defense counsel began to say "I would ask that—", but the court interrupted, stating:

> "Nope, I've already read it to them. It's already been done, it's in the record, you absolute—they—I'll give them a copy of it, and if you think that there's an argument that you wish to make you could point out, when we started this trial, the judge read these instructions, but I've already read the instructions to them."

Once the jury returned, the court invited the jurors to reread to themselves the instructions it had provided at the beginning of the trial and the attorneys to refer to them in their closing arguments:

> "So you all have that second set of instructions that I promised you. The first pages 1 through 5, when we began this trial last week, I read those instructions to you. I have simply included those so you have a complete set of the instructions that I've given in this case.
>
> "I'm not going to go back and read those, but they are there for you to re-read and for the attorneys to argue as to how those apply to their case at this point. I'm beginning on page 6, where it says 'Definitions.'
>
> "So same rules apply as I read through this second set of instructions. You can read along silently with yourself, you can just listen, however you process the information."

The trial court then read the remaining jury instructions aloud, beginning with definitions of sexual terms in the offenses and the elements of the offenses themselves. The parties made closing arguments and the jury was sent to deliberate. Defendant was convicted on all counts.

Defendant assigns error to the trial court's refusal to reread aloud the instructions on the presumption of innocence and proof beyond a reasonable doubt, defendant's statements, defendant not testifying, evaluating witness testimony, inferences, direct and circumstantial evidence, and the definition of "knowingly and with knowledge." To put defendant's argument in context, we begin with the relevant law.

ORCP 58 B[2] and ORCP 59 B, made applicable to criminal trials by ORS 136.330, provide two important rules governing the structure of trials and requirements for instructing the jury.

ORCP 58 B provides the manner of proceedings and the order in which stages of a jury trial must generally occur. It provides that the court must instruct the jury at two distinct times: after the jury is sworn and after the evidence is concluded. First, "[a]fter the jury is sworn, the court will instruct the jury concerning its duties, its conduct, the order of proceedings, the procedure for submitting written questions to witnesses if permitted, and the legal principles that will govern the proceedings." ORCP 58 B(2). Second, "[a]fter the evidence is concluded, the court will instruct the jury. The court may instruct the jury before or after the closing arguments." ORCP 58 B(8). The second set of instructions is the court's "charge" to the jury. *Webster's Third New Int'l Dictionary* 377 (unabridged ed 2002) (A "charge" is "a formal address containing instruction or exhortation: such as * * * an instruction given by the court to the jury in order to govern their action in coming to or making their decision; *specifically* **:** the statement made by the judge to the jury at the close of a trial of the principles of law that the latter are bound to apply to the facts as determined by them in deciding upon their verdict"); *Black's Law Dictionary* 295 (4th ed 1968) ("Charge. *In Common-law Practice*. The final address by judge to jury before verdict, in which he sums up the case, and instructs jury as to the rules of law which apply to its various issues, and which they must observe."); *see also* ORCP 58 B(6) (1978) (providing that, after the close of evidence, "[t]he court then shall charge the jury").

ORCP 58 B provides trial courts with discretion to deviate from the prescribed order of proceedings "for good cause stated in the record." ORCP 58 B ("Trial by a jury shall proceed in the following manner unless the court, for good cause stated in the record, otherwise directs."). Additionally, ORCP 58 B(8) provides the court with discretion, after the

___

[2] ORCP 58 was amended in 2022, after defendant's trial. The amendments changed the word "shall" to "will" in subsections B(2) and B(8). Those amendments do not affect our analysis; consequently, throughout this opinion, we refer to the current version.

evidence is concluded, to provide its final jury instructions either before or after closing arguments. ORCP 58 B(8) ("After the evidence is concluded, the court will instruct the jury. The court may instruct the jury before or after the closing arguments.").

ORCP 59 B also applies to the court's final jury instructions, and it requires the court to instruct the jury on "all matters of law necessary for its information in giving its verdict" both orally and in writing:

> "Charging the jury. In charging the jury, the court shall state to the jury all matters of law necessary for its information in giving its verdict. *** . The court shall reduce, or require a party to reduce, the instructions to writing. The jury shall take the court's written instructions with it while deliberating upon the verdict."

Unlike ORCP 58 B, ORCP 59 B does not provide that a court may exercise discretion and deviate from its requirements.

Defendant argues that the court erred as a matter of law by declining to read aloud to the jury, after the close of evidence, the pages of jury instructions that included information about the presumption of innocence and proof beyond a reasonable doubt, defendant's statements, defendant not testifying, evaluating witness testimony, inferences, direct and circumstantial evidence, and the definition of "knowingly and with knowledge." Defendant argues that, under ORCP 58 B and 59 B, at the close of evidence, the court was required to read those instructions to the jury in addition to providing a written copy, regardless of the fact that the court had read those same instructions to the jury at the beginning of the trial. He argues that the court's refusal prejudiced him because it minimized the importance of those fundamental legal principles, all of which relate specifically and indispensably to a criminal defendant's rights.

The state, on the other hand, characterizes the issue as a discretionary timing choice. The state agrees that the court was required to read the instructions aloud but argues that, under ORCP 58 B, the court had discretion to determine *when* it would do so and, because it read them

on the first day of the trial, it fulfilled that requirement. Additionally, the state argues that, because the court provided the jury with a written copy of the instructions to reread independently, even if the court did err by only providing written instructions after the close of the evidence, the error was harmless.

The parties' arguments raise a question of statutory interpretation, which we review as a matter of law. *See State v. Gaines*, 346 Or 160, 162, 206 P3d 1049 (2009) (so reviewing); *see also A. G. v. Guitron*, 351 Or 465, 471, 268 P3d 589 (2011) ("we apply the usual method of statutory interpretation" to rules of civil procedure). We begin with ORCP 59 B. As noted above, that rule's reference to "charging the jury" addresses the court's second set of instructions to the jury. At that point, the trial court "*shall* state to the jury *all* matters of law necessary for its information in giving its verdict," and "*shall*" reduce the instructions to writing. ORCP 59 B (emphases added). ORCP 59 B contains no indication that the court has discretion to deviate from its requirements.

Absent some textual indication to the contrary, a court does not have discretion to ignore mandatory language. *See Coleman and Coleman*, 117 Or App 333, 335, 844 P2d 234 (1992) (concluding that trial court does not have discretion to ignore UTCRs using mandatory language of "shall"); *State ex rel AFSD v. Buethe*, 307 Or 89, 92, 763 P2d 723 (1988) (mandatory language of ORS 109.155 that admission of paternity "shall be reduced to writing" does not grant discretion to accept oral admission rather than written). Thus, ORCP 59 B does not provide the trial court with discretion to alter the method by which it provides instructions after the close of evidence: It must provide all of the instructions "necessary for [the jury's] information in giving its verdict" both orally and in writing.

With that in mind, we consider ORCP 58 B, which uses mandatory language but also, as noted above, expressly provides the court with discretion in two respects: The trial court "may" give its post-close-of-evidence instructions to the jury before or after closing arguments, ORCP 58 B(8), and may alter the order in which the proceedings take place

"for good cause stated in the record," ORCP 58 B.[3] The state contends that the court's discretion to alter the order of events at trial granted by ORCP 58 B includes discretion to orally state some of the instructions "necessary for [the jury's] information in giving its verdict" at the start of trial, rather than as part of the charge to the jury after the close of evidence, as required by ORCP 59 B. In support of that view, it cites *State v. Stevens*, 311 Or 119, 145, 806 P2d 92 (1991), and *State v. Thompson*, 328 Or 248, 266, 971 P2d 879, *cert den*, 527 US 1042 (1999).

The question, then, is whether the discretion to alter the order of trial granted in ORCP 58 B supersedes the requirement of ORCP 59 B to provide the jury with all the necessary instructions, both orally and in writing, after the close of evidence. As a textual matter, it does not appear to. As noted above, the text of ORCP 59 B is mandatory. Further, ORCP 58 B(8)'s specific inclusion of a limited discretionary choice regarding charging the jury—the court may choose whether to do it before or after closing arguments, but always after the close of evidence—confirms ORCP 59 B's textual indication that courts lack discretion to deviate from its requirement that, in "charging the jury," the court "*shall* state to the jury all matters of law necessary

---

[3] For example, ORCP 58 B(4) directs that "[t]he plaintiff will introduce the evidence on plaintiff's case in chief, and when plaintiff has concluded, the defendant may do likewise." However, a trial court, for good cause stated in the record, may allow parties to call witnesses out of order. *See Dominguez and Fields*, 286 Or App 504, 513, 399 P3d 472 (2017) (parent allowed to examine a witness out of order); *Whaley v. Russell Stover Candies, Inc.*, 44 Or App 541, 547, 606 P2d 667 (1980) (defense expert witness was "called out of order as an accommodation during plaintiff's case"). Despite ORCP 58 B(6)'s instruction that, after the evidence is concluded, unless both sides waive closing arguments, the plaintiff will "commence and conclude the argument to the jury," a trial court may vary the manner in which closing arguments are conducted for good cause stated in the record. *State v. Stacey*, 302 Or App 470, 478, 459 P3d 261 (2020); *see also State v. Ness*, 54 Or App 530, 535, 635 P2d 1025 (1981), *aff'd on other grounds*, 294 Or 8, 653 P2d 548 (1982) (recognizing trial court's discretion to vary which party made the last argument under ORCP 58 B). Additionally, although ORCP 58 B(3) instructs that, after the jury is sworn, "[t]he plaintiff may concisely state plaintiff's case and the issues to be tried; the defendant then, in like manner, may state defendant's case based upon any defense or counterclaim or both," a trial court may allow the defense to defer its opening statement until after the state puts on its case in chief. *See State v. Seeger*, 4 Or App 336, 337-39, 479 P2d 240 (1971) (trial court erred by allowing the prosecutor to argue that by "permitting defendant to defer making his opening statement, the court was 'allowing the defendant to make up a story while the case is going on'").

for its information in giving its verdict" and also provide the instructions in writing. (Emphasis added.)

Further, contrary to the state's argument, neither *Stevens* nor *Thompson* suggests otherwise. Although those cases demonstrate that trial courts have discretion in whether, and when, to give instructions at times other than at the close of evidence, they do not address whether ORCP 58 B gives courts discretion not to comply with the mandatory jury-charge provision of ORCP 59 B.

In *Stevens*, in response to the state's objection that a defense witness's testimony was relevant to a defense that the defendant had chosen not to raise, the trial court instructed the jury by reading a statute describing the permissible use of the evidence. 311 Or at 143-44. On appeal, the defendant argued that, by reading the instruction mid-trial, the court had deviated from the "normal procedure" of proceedings without good cause. *Id.* at 145. The Supreme Court accepted, for the sake of argument, the defendant's contention that the instruction was not a properly given limiting instruction but was, instead, "a final instruction given out of order," but explained that the court's reason for giving it—allowing the defense witness to testify broadly "while helping the jury to focus on the relevance of the evidence"— constituted good cause for the change from the "customary order" of proceedings. *Id.*

*Stevens* demonstrates that a court's discretion to change the order of trial for good cause includes the ability to instruct the jury when it becomes necessary during testimony. However, it does not address whether the court's discretion under ORCP 58 B permits deviation from the requirements of ORCP 59 B, because the court's instructions at the close of evidence—its "charge" to the jury—were not at issue.

In *Thompson*, the trial court inadvertently failed to provide the jury with certain statutory definitions and, during deliberations, the jury asked a question demonstrating that it needed them. 328 Or at 265. The court provided the missing definitions. *Id.* On appeal, the defendant argued that the court improperly gave the instructions during

deliberations, because giving them at that time unduly emphasized them. *Id.* at 266. The state argued that, under ORCP 59 B, it would have been error for the trial court *not* to provide the instructions when requested by the jury.[4] *Id.* at 266 n 11. The Supreme Court explained that the issue implicated a trial court's power to provide "jury reinstruction," which is a discretionary question. *Id.* at 266; *see* ORCP 59 D (if, after the jury retires for deliberation, the jury "requests information on any point of law," the court "may" provide further information). The court disagreed with the defendant that the timing of the reinstruction was prejudicial, and, apparently for that reason, held that the trial court did not abuse its discretion in deciding whether to reinstruct the jury. *Thompson*, 328 Or at 266-67. Thus, *Thompson*, like *Stevens*, does not address ORCP 59 B.

Based on the text of the rules, we conclude that a trial court lacks discretion to omit "matters of law necessary for [the jury's] information in giving its verdict" from its oral presentation of the instructions to the jury after the close of evidence. The court, therefore, erred.

However, our inquiry does not end there. The state further argues that, even if the trial court erred by refusing to read the instructions orally to the jury at the close of evidence, that error is harmless. An error is harmless if there is "little likelihood" that it affected the jury's verdict. *State v. Davis*, 336 Or 19, 33, 77 P3d 1111 (2003). "Instructional error, like any other error, does not justify reversal unless the error was prejudicial." *State v Guckert*, 260 Or App 50, 60, 316 P3d 373 (2013), *rev den*, 354 Or 840 (2014). To constitute reversible error, an instructional error must have prejudiced the party when the instructions are considered as a whole. *Thompson*, 328 Or at 266. "[C]ases should not be reversed upon instructions, despite technical imperfections, unless the appellate court can fairly say that the instruction probably created an erroneous impression of the law in the minds of the jur[ors] which affected the outcome of the case." *Waterway Terminals v. P. S. Lord*, 256 Or 361, 370, 474 P2d 309 (1970). The state argues that, because the trial court read the instructions at

---

[4] It does not appear that the defendant argued that the trial court erred under ORCP 59 B and, regardless, the court based its ruling on the trial court's discretionary power to *reinstruct* the jury, implicating ORCP 59 D.

the beginning of the trial and provided the instructions in written form at the end, when the instructions are considered as a whole, there is no reason to believe that the court's "minor departure from the procedures set forth in ORCP 58 and 59" had any effect on the verdict.

The trial court characterized the instructions in question, including the presumption of innocence and reasonable doubt, as "procedural." However, "[t]he presumption of innocence is not a mere form, but a substantial part of the law, that remains with the defendant from the beginning of the trial until a verdict is found." *State v. Rosasco*, 103 Or 343, 357, 205 P 290 (1922). "[P]roof of a criminal charge beyond a reasonable doubt is constitutionally required." *In re Winship*, 397 US 358, 362, 90 S Ct 1068, 25 L Ed 2d 368 (1970). It is important "in our free society that every individual going about his ordinary affairs have confidence that his government cannot adjudge him guilty of a criminal offense without convincing a proper factfinder of his guilt with utmost certainty." *Id.* at 364.

Providing instructions orally serves specific and indispensable functions that providing written instructions cannot. Because of the jury's critical role, "[i]t is essential to the administration of justice that a jury scrupulously follow the law as given to it by the judge, and to that end his instructions should be clear and firmly fixed in the mind of each juror." *United States v. Becerra*, 939 F3d 995, 1000 (9th Cir 2019) (quoting *Babson v. United States*, 330 F2d 662, 666 (9th Cir 1964)). "Since before the founding of our Republic, courts have universally met the need to educate jurors by orally advising jurors" for multiple "excellent reasons." *Becerra*, 939 F3d at 1000. Some jurors may not adequately understand written instructions, and

> "many of us at times succumb to the temptation to glaze over a long paragraph of text or flip over a few pages of a lengthy stack of papers. When the instructions are read orally, tonal inflection can make the content of the instructions more accessible, as well as discourage the 'tuning out' common when reading dense material. Oral instruction in the formal courtroom setting thus assures that jurors are exposed to the substance of the essential instructions by at least one sensual route.

"The oral charge also performs a second, signaling function that cannot be replaced by a printout or a pamphlet. Jury instructions are not the judicial equivalent of a car manual or a cookbook. When an enrobed judge orally charges the jury, the jurors are impressed with the fact that they have been entrusted with the power to decide the defendant's fate. This oral, public ritual helps ensure that jurors recognize the enormity of their task and take that task seriously. * * *

"For these reasons, the historic practice of oral jury instruction remains central to the fairness of jury trials. That conclusion does not mean that procedures for instructing juries have remained static—or should. Additions to oral instructions have enhanced the likelihood that jury instructions will effectively communicate to jurors the legal principles governing their critical task. * * *. But even as the exact form of a trial court's jury charge has evolved, there has always been a bedrock recognition that the trial court must orally charge the jury before deliberations commence."

*Id*. at 1001-02 (internal citations and quotation marks omitted).

Here, we cannot say that the error had little likelihood of affecting the verdict, nor that the written instructions and preliminary instructions remedied the error when considered as a whole. When providing its precautionary instructions, the trial court recognized the importance and impact of providing instructions in both written and oral form for effective communication when it told the jury: "As I read through these instructions, you're welcome to read along to yourself. You're welcome to just listen. However you process the information." Eight days later, when discussing final instructions with the parties, the trial court recognized that the length of the trial may have affected the jury's knowledge of the instructions, stating "I am going to attach the first five pages that I gave them before, because—it's been two weeks." Both attorneys, who were undoubtably more familiar with those instructions than the jury, also needed to refresh their memories on which instructions had been given at the beginning of the trial, with the prosecuting attorney requesting, "Can you review for us which are included in those first five [pages]? Like the—the kind of

generalized instruction?" At the close of evidence, the trial court provided the final instructions and again invited the jury: "So same rules apply as I read through this second set of instructions. You can read along silently with yourself, you can just listen, however you process the information."

As the Supreme Court has recognized, "[r]esearch shows that people tend to remember best, and be influenced most, by the latest event in a sequence." *State v. Chitwood*, 370 Or 305, 318, 518 P3d 903 (2022). Here, the final instructions read to the jury, eight days after the preliminary instructions, did not communicate all of the information fundamental to the fairness of our criminal justice system. Rather, the jury, to the extent that it remembered them, was left with the impression that those instructions, including the presumption of innocence, proof beyond a reasonable doubt, and defendant not testifying, are not important enough to be impressed upon it again. The jury was sent to deliberate without the instructions most foundational to a defendant's rights "firmly fixed in the mind of each juror." *Becerra*, 939 F3d at 1000.

In effect, the trial court recognized and accepted a legitimate risk that individual jurors would not remember, understand, and apply the basic constitutional principles that underlie a defendant's rights in our criminal justice system based upon their individual method of processing information.[5] To find this error harmless would dilute the public's confidence that their "government cannot adjudge [them] guilty of a criminal offense without convincing a proper factfinder of [their] guilt with utmost certainty." *In re Winship*, 397 US at 362. We will not do so.

In sum, the trial court erred when it did not read aloud all of the final instructions to the jury as required by ORCP 59 B. That error is not harmless because, although the court read the instructions aloud at the very beginning of the trial and then provided them in writing, substantial time had passed, and—as ORCP 59 B recognizes—written

---

[5] Even were written instructions sufficient, the trial court did not provide any time for the jury to reread those instructions before closing arguments and immediately began reading definitions of terms included in the charges for sexual crimes.

instructions are not a substitute for oral instructions. In light of the extreme importance and fundamental constitutional basis of the legal principles at issue specifically to a criminal defendant, and the reality of recency bias, there was more than "little likelihood" that the error affected the jury's verdict, and that defendant was prejudiced. *Davis*, 336 Or at 33.

Reversed and remanded.