112 April 9, 2026 No. 16

IN THE SUPREME COURT OF THE
STATE OF OREGON

STATE OF OREGON,
*Petitioner on Review,*

*v.*

DEREK MITCHELL SHINE,
*Respondent on Review.*

(CC 19CR42716) (CA A178033) (SC S071383)

En Banc

On review from the Court of Appeals.*

Argued and submitted May 13, 2025.

Lauren P. Robertson, Assistant Attorney General, Salem, argued the cause and filed the briefs for petitioner on review. Also on the briefs were Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Zachary Lovett Mazer, Deputy Public Defender, Oregon Public Defense Commission, Salem, argued the cause and filed the brief for respondent on review. Also on the brief was Ernest G. Lannet, Chief Defender, Criminal Appellate Section.

GARRETT, J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.

_____

* Appeal from Washington County Circuit Court, Andrew R. Erwin, Judge, 334 Or App 360, 557 P3d 181 (2024).

**GARRETT, J.**

In this case, we consider whether the trial court erred in its instructions to the jury at the conclusion of defendant's criminal trial. At the close of evidence, the court provided the jury with a set of final written instructions. The court read some of those instructions aloud, but it declined to reread certain instructions that it had read at the beginning of the trial. Defendant objected that the court's final oral instructions were incomplete under Oregon Rule of Civil Procedure (ORCP) 59 B—a rule that applies to criminal trials—which provides that, "[i]n charging the jury, the court shall state to the jury all matters of law necessary for its information in giving its verdict[.]"

The Court of Appeals agreed with defendant and reversed, holding that ORCP 59 B required the trial court to read the instructions that it had omitted and that the error was not harmless. We allowed review to consider the state's argument that the Court of Appeals misconstrued the applicable rules. We now affirm.

## BACKGROUND

The state charged defendant with multiple crimes. After the jury was selected, but before opening statements, the trial court provided the jury with a set of written instructions and invited the jurors to read along while the court read them aloud. The trial court explained to the jury that those initial instructions were "precautionary" and said that it would give the jury further instructions after the close of evidence. The trial court proceeded to give instructions based on Uniform Criminal Jury Instruction (UCrJI) 1004 (precautionary instructions). These covered the role and conduct of the jury, basic legal principles such as the presumption of innocence and the state's burden of proof beyond a reasonable doubt, and some procedural matters (*e.g.*, turning off cell phones and taking notes). Next, the court read instructions corresponding to UCrJI 1005 (functions of the court and the jury); UCrJI 1009 (innocence of defendant - proof beyond a reasonable doubt); UCrJI 1024 (defendant's statements); UCrJI 1021 (defendant not testifying); UCrJI 1006 (evaluating witness testimony); UCrJI

1008 (inferences); UCrJI 1025 (direct and circumstantial evidence); and UCrJI 1036 (definitions of knowingly and with knowledge).

After the close of evidence and outside the presence of the jury, the parties and the trial court discussed the final jury instructions, which were set out in writing. The trial court indicated that it did not intend to read aloud pages one through five of those instructions, because it had already read them to the jury at the beginning of trial, approximately one week earlier. Defendant objected and specifically requested that the trial court read pages four and five, which addressed topics including the presumption of innocence, the state's burden of proof beyond a reasonable doubt, a defendant's right to not testify, factors to consider in evaluating witness testimony, reasonable inferences, direct and circumstantial evidence, and the definitions of "knowingly" and "with knowledge."[1] The trial court reiterated that those instructions had previously been read to the jury and would not be repeated, although they would be included among the jury's written instructions.

Following that colloquy with counsel, the trial court orally instructed the jury and provided them with the written instructions. The court called the jurors' attention to the content on pages one through five, reminded the jury that the court had read those instructions the week before, and said that they were there for the jurors' reference:

> "THE COURT: So you all have that second set of instructions that I promised you. The first pages 1 through 5, when we began this trial last week, I read those instructions to you. I have simply included those so you have a complete set of instructions that I've given in this case.
>
> "I'm not going to go back and read those, but they are there for you to re-read and for the attorneys to argue as to how those apply to their case at this point."

---

[1] Pages four and five of the final instructions correspond to UCrJI 1009 (presumption of innocence and proof beyond a reasonable doubt); UCrJI 1024 (defendant's statements); UCrJI 1021 (defendant not testifying); UCrJI 1006 (evaluating witness testimony); UCrJI 1008 (inferences); UCrJI 1025 (direct and circumstantial evidence); and UCrJI 1036 (knowingly and with knowledge).

The trial court proceeded to read other instructions, including instructions regarding the elements of the offenses. After closing arguments, the trial court read instructions analogous to UCrJI 1015 (addressing the manner of deliberation and other proceedings inside the jury room).

The jury found defendant guilty on all counts. On appeal, defendant raised several assignments of error, including (as pertinent to our review) the trial court's failure, after the close of evidence, to read aloud the instructions covering the presumption of innocence, the state's burden of proof beyond a reasonable doubt, and a defendant's right not to testify. Defendant argued that those omissions were contrary to ORCP 59 B, which provides that, "[i]n charging the jury, the court shall state to the jury all matters of law necessary for its information in giving its verdict[.]" The state argued that the trial court had acted permissibly, contending that a different rule, ORCP 58 B, provides courts with discretion over the timing of jury instructions. The state further argued that ORCP 58 A allows the trial court to depart from the usual order of proceedings for "good cause." Finally, the state argued that, because all the necessary instructions had been given to the jury in writing as well as orally (either at the beginning or the end of the trial), any error as to timing was harmless.

The Court of Appeals concluded that the trial court had erred. *State v. Shine*, 334 Or App 360, 362, 557 P3d 181 (2024). That court held that ORCP 59 B requires a trial court to orally recite all "matters of law necessary for [the jury's] information in giving its verdict" at the close of the case and that, contrary to the state's argument, ORCP 58 does not grant trial courts discretion to do otherwise. *Id*. at 370. The Court of Appeals reasoned that, because ORCP 59 B is mandatory by its own terms, whatever authority the trial court possesses under ORCP 58 A to alter the order of proceedings for good cause does not extend so far as to allow the court to omit the instructions that ORCP 59 B requires at the close of evidence. *Id*. at 367-70. Concluding that the error was not harmless, the Court of Appeals reversed and remanded for a new trial. *Id*. at 373-74. We allowed the state's petition for review.

ANALYSIS

ORCP 58 B[2] and ORCP 59 B are rules of civil procedure that the legislature has made applicable to criminal cases. ORS 136.330. In interpreting the ORCPs, we examine the text, context, and any pertinent rule history to determine the intent of the drafter, which is ordinarily the Council on Court Procedures (council). *A.G. v. Guitron*, 351 Or 465, 471, 268 P3d 589 (2011) ("we apply the usual method of statutory interpretation" to ORCPs (internal quotation marks omitted)); *State v. Vanornum*, 354 Or 614, 619-20, 317 P3d 889 (2013) (when a rule of civil procedure is promulgated by the Council on Court Procedures and accepted by the legislature without amendment, the intent of the council governs the interpretation of the rule).

ORCP 58 B sets forth the basic sequence of events in which a jury trial "shall" occur, "unless the court, for good cause stated in the record, otherwise directs." The rule addresses jury selection, initial jury instructions, opening statements, presentation of evidence, closing arguments, and final jury instructions. As to jury instructions, the rule provides:

"B(2)   After the jury is sworn, the court shall instruct the jury concerning its duties, its conduct, the order of proceedings, the procedure for submitting written questions to witnesses if permitted, and the legal principles that will govern the proceedings.

"＊＊＊＊＊

"B(8)   After the evidence is concluded, the court shall instruct the jury. The court may instruct the jury before or after the closing arguments."

Also at issue in this case is ORCP 59, titled "Instructions to Jury and Deliberation." That rule contains provisions addressing, among other things, proposed instructions at the commencement of trial (ORCP 59 A), the manner of deliberation (ORCP 59 C), the return of a verdict (ORCP 59 G), and the necessity of excepting to an

---

[2] ORCP 58 was amended in 2022, after defendant's trial, but those changes are not pertinent to our review.

instruction as a condition for appellate review (ORCP 59 H).
As pertinent here, ORCP 59 B provides as follows:

> "**Charging the jury.** In charging the jury, the court
> shall state to the jury all matters of law necessary for its
> information in giving its verdict. Whenever the knowledge
> of the court is by statute made evidence of a fact, the court
> shall declare such knowledge to the jury, which is bound to
> accept it as conclusive. The court shall reduce, or require a
> party to reduce, the instructions to writing. The jury shall
> take the court's written instructions with it while deliberat-
> ing upon the verdict. The clerk shall file a copy of the written
> instructions given to the jury in the court file of the case."

From the text of ORCP 58 B and ORCP 59 B, we make sev-
eral initial observations. To begin with, ORCP 58 B calls for
the trial court to instruct the jury at two different times.
First, after the jury is sworn, the court shall instruct it
regarding specified matters that include "its duties, its con-
duct, the order of proceedings, the procedure for submitting
written questions to witnesses if permitted, and the legal
principles that will govern the proceedings." ORCP 58 B(2).
Second, after the close of evidence and either before or after
closing arguments, "the court shall instruct the jury." ORCP
58 B(8). Unlike subsection B(2), subsection B(8) is silent as
to the content of the required instructions.

ORCP *59* B does speak to the content of jury instruc-
tions, albeit in general terms. It requires the court to "state
to the jury all matters of law necessary for its information in
giving its verdict." Several aspects of that requirement are,
appropriately, not in dispute. First, the rule is mandatory.
*See Friends of the Columbia Gorge v. Columbia River*, 346
Or 415, 426, 212 P3d 1243 (2009) (in ordinary usage, "shall"
connotes a mandatory duty). Second, in this case, there is
no dispute as to the content of the instructions that the trial
court declined to reread at the close of evidence. That is,
there is no question that those instructions are appropri-
ately considered "matters of law necessary for [the jury's]
information in giving its verdict." Third, the rule requires
the trial court to "state" the required instructions orally.

The parties' dispute solely concerns the point in the
trial at which the court must give the instructions required

by ORCP 59 B. The state takes the view that ORCP 59 B's directive to "charge" the jury with "matters of law necessary for its information in giving its verdict" is a requirement of content, not of timing. Questions of timing, the state contends, are addressed by ORCP *58* B, which specifies when the court should instruct the jury but also grants what the state describes as "broad discretion" to structure the sequence of trial as the court sees fit. Thus, the state argues, because all the required instructions were read to the jury at some point (either at the beginning of the trial or at the end), it does not matter when that occurred.

Defendant contends, and the Court of Appeals agreed, that ORCP 59 B imposes a timing requirement through the phrase "in charging the jury." Defendant argues that the "charge" to the jury occurs at the end of trial before the jury is sent to deliberate; on that view, ORCP 59 B requires that the trial court properly "charge" the jury by orally stating, *at the conclusion* of the trial, "all matters of law necessary for its information in giving its verdict." Nothing in ORCP *58* B, defendant reasons, is inconsistent with that requirement.

In support of his interpretation, defendant relies on relevant dictionary definitions of "charge." *Webster's* defines charge as,

> "a formal address containing instructions or exhortation: [such] as * * * an instruction given by the court to the jury in order to govern their action in coming to or making their decision; *specif* : the statement made by the judge to the jury *at the close of a trial* of the principles of law that the latter are bound to apply to the facts as determined by them in deciding upon their verdict."

*Webster's Third New Int'l Dictionary* 377 (unabridged ed 2002) (emphasis added).[3] *Black's Law Dictionary* defines "[c]harge" for purposes of "*[c]ommon-law [p]ractice*" as "[t]he

---

[3] *Webster's Third* was originally published in 1961, and its definition of "charge" has remained unchanged since then. *Webster's* at 70a; *see State v. Eastep*, 361 Or 746, 751 n 2, 399 P3d 979 (2017) (explaining that "[a]ny new definitional material since 1961 appears in an addendum section at the beginning of each republication" and that as a result "any version of *Webster's Third*—regardless of its copyright date—provides a relevant source of ordinary meaning for statutes enacted any time after 1961, if not earlier").

*final address* by judge to jury before verdict, in which [the judge] sums up the case, and instructs jury as to the rules of law which apply to its various issues, and which they must observe." *Black's Law Dictionary* 295 (4th ed 1968) (second emphasis added).

The state points to other dictionary definitions of the term that are more open-ended as to timing. *Black's Law Dictionary* elsewhere defines the verb "charge" to include "to instruct the jury on matters of law[]"). *Black's* at 294. The state further observes that, as of 1999, *Black's Law Dictionary* no longer indicates that a "charge" is limited to the final address to the jury. *See Black's Law Dictionary* 227 (7th ed 1999) (defining "charge" to mean, among other things, "[a]n instruction or command \*\*\*[;] JURY CHARGE \*\*\* [a]n assigned duty or task; a responsibility"); *see also Black's Law Dictionary* 248 (8th ed 2004) (defining "charge" in part as "**2**. To instruct or command \*\*\* **3**. To instruct a jury on matters of law <the judge charged the jury on self defense>").

The dictionary definitions indicate that the "charge" to the jury historically has been understood as defendant proposes, but also that the state's more open-ended interpretation is not implausible. Thus, as is often the case, dictionary definitions alone do not answer the question. *See State v. Cloutier,* 351 Or 68, 96, 261 P3d 1234 (2011) ("Dictionaries, after all, do not tell us what words mean, only what words can mean, depending on their context and the particular manner in which they are used.")

A view of ORCP 58 and 59 in their totality, however, provides more support for defendant's position that the Council on Court Procedures understood "charge" to have a specific temporal meaning. Several features of ORCP 59 show that that rule is mostly directed at events occurring near or at the end of trial. Sections C, D, F, and G of the rule address, respectively, jury deliberation, additional instructions after deliberations begin, discharge of the jury, and delivery of the verdict. All of those events occur after the close of evidence. That does not preclude the possibility that section B, in referring to the "charge" to the jury, could refer to instructions that occur much earlier in the

trial, but it does tend to make that interpretation less likely. Understanding "charge" to mean the final instructions to the jury, close in time to when deliberations begin, is more consistent with the other provisions of ORCP 59.

Certain provisions reinforce that understanding more specifically. For example, ORCP 59 C(5) provides that, "[a]fter hearing *the charge* and submission of the cause to them, the jury shall retire for deliberation." (Emphasis added.) That sentence contemplates that the "charge" is a distinct event that occurs shortly before deliberations begin, as opposed to the totality of instructions that jurors receive throughout the trial.

In addition, ORCP 59 A addresses instructions proposed by the parties. The first sentence of that section states, "[u]nless otherwise requested by the trial judge on timely notice to counsel, proposed instructions shall be submitted at the commencement of the trial." That is one of the few portions of ORCP 59 addressing matters that occur early in the trial process. However, the next sentence provides that "[p]roposed instructions upon questions of law developed by the evidence, which could not be reasonably anticipated, may be submitted at any time before the court has instructed the jury." The logic of that sentence assumes that the court "instruct[s] the jury" after the evidence has been presented.

Construing the word "charge" in ORCP 59 B to mean the final oral instructions to the jury, after the close of evidence, is also consistent with the historical practice of which the council was aware when the rule was adopted in 1979, and with the council discussion and amendments to the rule following that initial adoption. *See* Or Laws 1979, ch 284 §§ 3, 38 (rules promulgated by council in 1978 and adopted during 1979 legislative session). As noted above, relevant dictionary definitions provide some support for the view that, traditionally, the "charge" to the jury occurred at the end of the trial. The state also acknowledges that, historically, the statutes that governed Oregon civil and criminal procedure provided for instructions to the jury only at the end of the trial. *See, e.g., former* ORS 17.210(5), (6) (1977) (providing for court to "charge the jury" after evidence and

closing arguments); *former* ORS 136.330(1) (providing that ORS 17.210 applies to criminal trials).

The relevant legislative history for an ORCP includes activity by the council leading to its promulgation and any amendments to the rule by the legislature. *See* ORS 1.735(1) (rules promulgated by the council become effective on January 1 of the following year unless amended, repealed, or supplemented by the legislature); *Guitron*, 351 Or at 478-79 (considering whether legislature made amendments to the rule at issue). If an ORCP becomes effective without legislative amendment, the relevant history is that of the rule's promulgation by the council. *Vanornum*, 354 Or at 623; *see also Waddill v. Anchor Hocking, Inc.*, 330 Or 376, 382 n 2, 8 P3d 200 (2000), *adh'd to on recons*, 331 Or 595, 18 P3d 1096 (2001) ("unless the legislature amended the rule at issue in a particular case in a manner that affects the issues in that case, the Council's intent governs the interpretation of the rule").

In its original form, ORCP 59 B provided that written instructions could be given, in addition to the oral charge, if the parties requested them or at the court's option. Council on Court Procedures, Staff Comment to Rule 59, *reprinted in* Frederic R. Merrill, *Oregon Rules of Civil Procedure: A Handbook* 124, 127 (1981) (stating that ORCP 59 B, as promulgated, provided that written instructions will be given to the jury "entirely at the discretion of the court"); Or Laws 1979, ch 284, § 38 (HB 3131) (added the text permitting the parties to require written instructions be provided); *see also* ORCP 59 B (1980) ("In charging the jury, the court shall state to them all matters of law necessary for their information in giving their verdict. \*\*\* If either party requires it and at commencement of the trial gave notice of that party's intention so to do, or if in the opinion of the court it is desirable, the charge shall be reduced to writing, and then read to the jury by the court. The jury shall take such written instructions with it while deliberating \*\*\*.").

In 1982, the council promulgated a rule, subsequently adopted by the legislature without amendment, that authorized trial courts to provide the jury with an electronic recording of the oral "charging of the jury" as an alternative

to written instructions. Council on Court Procedures, Staff Comment to Rule 59, 1982, *reprinted in* Frederic R. Merrill, *Oregon Rules of Civil Procedure: 1984 Handbook* 137 (1984) ("The amendment would allow the submission of jury instructions by electronic recording as well as in written form."); Or Laws 1983, ch 751 (changing effective date of promulgated rules and amending other rules not relevant here).

　　　　In 2002, ORCP 59 B was amended again to require, not just permit, trial courts to provide the jury with written jury instructions or an electronic recording of the oral "charge." *See* Council on Court Procedures, 1 *Legislative History Materials 2001-2003 Biennium Promulgated Amendments to ORCP*, January 15, 2003, Promulgated 2002 Rules with Commentary 4, 13; ORCP 59 B (2004) (juries to be provided with written instructions unless it is not feasible, in which case court to provide an electronic recording of the jury charge); Minutes, Council on Court Procedures, May 11, 2002, 4 (discussing advisability of removing discretion to allow electronic recording given the lack of staff resources in in some courts but overall expressing desirability of written instructions being provided to permit a "dual learning process" with instruction being provided both orally and in writing); Minutes, Council on Court Procedures, Sept 14, 2002, 5 (Judge Johnson stating that written instructions should be provided to the jury "at the beginning of trial rather than as late as immediately before the jury is charged").

　　　　Finally, in 2008 the council proposed removing the provision that gave trial courts discretion to allow an electronic recording of the oral jury charge in lieu of written instructions. *See* Council on Court Procedures, 1 *Legislative History Materials 2007-2009 Biennium,* Dec 13, 2008, Promulgated Amendments 10; *see also* Minutes, Council on Court Procedures, March 8, 2008, 4-6 (discussing proposal to remove provision allowing for electronic recordings of the jury charge and discussing concerns that trial courts would oppose amendment); Minutes, Council on Court Procedures, June 7, 2008, 6 (Judge Miller stating that, "if jury instructions are in writing, there will be a better level

of comprehension by jurors, and the jurors will have the ability to quickly refer to different sections rather than to have to wind through a tape recording"); Minutes, Council on Court Procedures, Dec 13, 2008, 6-7 (discussing training for judges and attorneys, vote to promulgate amendment as drafted). That change was adopted by the legislature without amendment. *See* ORCP 59 B (2010) (requiring jury instructions be reduced to writing in all cases).

In short, the original version of ORCP 59 B, as well as the various proposals, changes, and accompanying council discussions through 2008, consistently reflect an understanding that the jury "charge" happens at the close of evidence. Moreover, it appears that the charge was consistently understood to require a complete oral statement of the required instructions, with written instructions being recognized over time as a useful and increasingly feasible accompaniment.

For the foregoing reasons, the text, context, and history of ORCP 59 B all point to the conclusion that the "charge" to the jury refers to the final instructions that the judge reads aloud before the jury retires to begin deliberations. In resisting that conclusion, the state relies largely on ORCP *58*, and particularly the amendments to that rule in 2000.

As noted above, ORCP 58 concerns the order in which the stages of jury trial should occur. ORCP 58 A provides that trial court must follow the prescribed order of proceedings "unless the court, for good cause stated in the record, otherwise directs[.]" ORCP 58 B expressly provides that the court will instruct the jury at two stages: after the jury is sworn (ORCP 58 B(2)) and after the evidence is concluded (ORCP 58 B(8)). The state argues that ORCP 58 B thus permits "split" jury instructions, allowing the trial court to give some instructions at the beginning of the case and some at the end, at the court's discretion. The function of ORCP *59* B, in the state's view, is merely to specify that the court's instructions to the jury, in their totality and whenever given, must include "all matters of law necessary for [the jury's] information in giving its verdict." We are not persuaded.

As we have already discussed, the text, context, and history of ORCP *59* B indicate that the council consistently understood "charge" to mean the instructions read to the jury at the end of the trial. The state's argument that "charge" has no temporal meaning is based largely on its premise that ORCP *58* B affords the trial court "broad discretion" over the sequence of trial and the timing of jury instructions in particular. From that premise, the state reasons that ORCP 59 B, to be consistent with ORCP 58 B, must not be concerned with timing at all, but only with content.

We disagree. The state is correct that ORCP 58 B contemplates "split" instructions, some at the beginning of trial and some at the end. But the rule does not, as the state contends, give the trial court "broad discretion" over the timing of the instructions. Subsection B(2) states that, after the jury is sworn, the trial court "shall instruct the jury concerning its duties, its conduct, the order of proceedings, the procedure for submitting written questions to witnesses if permitted, and the legal principles that will govern the proceedings." That provision does not give the trial court discretion to decide that it will not give the jury those required instructions at the specified time. Subsection B(8) then provides that, after the "evidence is concluded, the court shall instruct the jury." Neither provision vests the trial court with discretion to do other than what the provision requires. ORCP 58 A does state that a jury trial "shall proceed" in the following manner "unless the court, *for good cause stated in the record*, otherwise directs." (Emphasis added.) Although the state argues that ORCP 58 thereby confers "broad discretion" on the trial court, a more accurate description of the rule is that it prescribes an order of proceedings that the trial court ordinarily must follow, absent a finding of good cause to do otherwise under certain circumstances.[4] The trial court stated no such finding here.

In addition, the fact that ORCP 58 B(2) specifies *what* instructions must be given early in the trial, "[a]fter the jury is sworn," undermines the state's position that

---

[4] ORCP 58 A, by its text, only applies to subsections B(3) through B(6) governing the parties' arguments and the order of evidence.

ORCP 58 B is concerned strictly with the timing of instructions and ORCP 59 B strictly with their substance. ORCP 58 B(2) directs the court to instruct the jury, after being sworn, "concerning its duties, its conduct, the order of proceedings, the procedure for submitting written questions to witnesses if permitted, and the legal principles that will govern the proceedings." Most of the listed matters are plainly aimed at assisting jurors in understanding the nature of a trial and what is expected of them, as opposed to matters of substantive law. The phrase "the legal principles that will govern the proceedings" could be understood to reach matters of substantive law, such as the definitions of terms or the elements of a crime with which a defendant is charged. The phrase could also be understood in a more limited way to refer to matters of trial procedure. We have no need in this case to resolve the meaning of that phrase, because there has been no challenge to the instructions that the trial court gave at the beginning of trial. It suffices for present purposes to observe that ORCP 58 B(2) directs the trial court to provide the jury with initial instructions and also prescribes, at least in general terms, the content of those instructions.

ORCP 58 B(8), by contrast, provides that, after the close of evidence, the court "shall instruct" the jury and says nothing at all about the content of the required instructions. But its silence in that regard is understandable given the history of the rule, considered together with ORCP 59 B.

Before the 2000 amendments, ORCP 58 B contained only one provision regarding jury instructions, not two, and that provision directed the court to "charge" the jury at the end of the trial. *See* ORCP 58 B(4), (6) (1978) (providing that, after evidence and closing argument, "[t]he court then shall charge the jury"). Thus, the wording of ORCP 58 B tracked the word "charge" in ORCP 59 B. As such, that version of ORCP 58 B had no need to describe the content of the "charge," because that was done in ORCP 59 B, which provided that the charge shall consist of "all matters of law necessary for [the jury's] information in giving their verdict."

The 2000 amendments to ORCP 58 regarding jury instructions were intended to require "that jurors be

instructed at the outset [of trial] on basic duties and procedures" as part of a package of proposals to reform jury practices. Council on Court Procedures, 1 *Legislative History Materials 1999-2001 Biennium*, Council on Court Procedures, Minutes, June 10, 2000, 7. But none of those proposals was intended to "change what many trial court judges have done, and are doing as a matter of discretion." Minutes, Council on Court Procedures, Sept 9, 2000, 7-8. As we have noted, the rule required only a single set of instructions, given at the end of trial. As observed by this court as early as 1968, however, a practice had emerged of giving jurors some "basic instructions" before trial. *See McCaffrey v. Glendale Acres*, 250 Or 140, 143 n 2, 440 P2d 219 (1968) (noting that, because a "charge to the jury shall come at the end of the case *** any instructions given at the beginning should then be repeated"). The understanding that some basic instructions were to be given at the beginning of trial in addition to, rather than as a substitute for, the final jury charge at the close of the case is reflected in the older uniform jury instructions. *See, e.g.*, UCrJI 1002 (1988), *renumbered as* UCrJI 1004 (comment to precautionary instruction: "This is a preliminary instruction and is not intended to replace any instructions that would ordinarily be given after argument.").

The 2000 amendments were initially proposed by a special jury reform subcommittee. *See* Minutes, Council on Court Procedures, June 10, 2000, 7-8 (adopting subcommittee's proposed amendments). The work product file of that subcommittee contains several academic articles regarding jury reform that, among other things, urged courts to adopt "case-specific" preliminary instructions to help jurors appreciate the significance of evidence as it is presented. Committee Work Product, ORCP 55-57, Council on Court Procedures, *1999-2001 Biennium History Materials*, 19, 35.[5] The materials in the record emphasized that preliminary instructions should be given *in addition* to the final

---

[5] *Available at* https://counciloncourtprocedures.org/Content/1999-2001_Biennium/rule_57-59_committee/rule_55-57_committee_work.pdf (accessed Apr 2, 2026). The article with the most in-depth discussion of preliminary instructions was a law review article. *Id*. at 9-34 (citing The Honorable B. Michael Dann, *"Learning Lessons" and "Speaking Rights": Creating Educated and Democratic Juries*, 68 Ind LJ 1229 (1993)).

instructions at the close of the case, and further described the benefits of providing the final full instructions before closing argument to assist the jury in assessing the relative strength of each party's argument. *Id*. at 20, 23.[6]

The jury reform subcommittee's proposals were borrowed from Arizona Rule of Civil Procedure 39(b) (1999), *id*. at 39, which provided that trial by jury shall follow the order prescribed for trial "unless the court for good cause stated in the record" directs otherwise. This mirrors the text proposed and later adopted in ORCP 58 A. Subsection (1) of that Arizona rule, governing the content of preliminary instructions, was copied verbatim into the subcommittee's proposed rules and adopted by the council with minimal changes as ORCP 58 B(2). *Compare* Committee Work Product, ORCP 55-57, at 39 ("Immediately after the jury is sworn, the court shall instruct the jury concerning its duties, its conduct, the order of proceedings, the procedure for submitting written questions of witnesses or of the court as set forth in Rule 39(b)(10), and the elementary legal principles that will govern the proceeding"),[7] *with* Agenda, Council on Court Procedures, Proposed Amendments, June 10, 2000, 55-56 (same).[8] Judge Harris, who was on the subcommittee, confirmed that the text of ORCP 58 B(2) came from an Arizona rule. Minutes, Council on Court Procedures, June 10, 2000, 7-8 (adopting subcommittee's proposed amendments).

By the time the council was considering the Arizona rule, the Arizona Supreme Court had long held that trial courts must reinstruct at the close of the case on core legal principles even if those topics were covered in the preliminary instructions. *State v. Johnson*, 173 Ariz 274, 276, 842 P2d 1287 (1992) (Trial courts "must instruct juries on basic legal principles, including burden of proof and reasonable doubt, following the evidence and before the commencement of deliberations. This is so even though a jury

---

[6] The committee's work product also discussed the flawed model of assuming perfect "recall readiness" with regarding to final instructions. *Id*. at 15-16.

[7] *Available at* https://counciloncourtprocedures.org/Content/1999-2001_Biennium/rule_57-59_committee/rule_55-57_committee_work.pdf (accessed Apr 2, 2026)

[8] *Available at* https://counciloncourtprocedures.org/Content/1999-2001_Biennium/agendas/2000-06-10_agenda.pdf (accessed Apr 2, 2026)

has been instructed prior to the presentation of evidence, and regardless of the brevity of trial."); *State v. Kinkade*, 140 Ariz 91, 94, 680 P2d 801 (1984) (error for trial court to fail to read instruction regarding proof beyond a reasonable doubt at the end of trial, even though included in preliminary instructions).

Although nothing in the subcommittee's work file refers specifically to those cases, we think it is more likely than not that the committee was aware of Arizona practice, considering the extent to which the subcommittee was expressly drawing from Arizona law. Put another way, it seems unlikely that the council simultaneously intended to borrow from Arizona law and to give trial courts discretion to stop providing juries with complete instructions at the conclusion of the trial, given that Arizona practice rejected that very approach.

For the foregoing reasons, we conclude, as did the Court of Appeals, that ORCP 59 B requires the trial court to "charge" the jury at the conclusion of trial by providing an oral statement of "all matters of law necessary for its information in giving its verdict." Further, nothing in ORCP 58 B is inconsistent with that requirement. Rather, we understand the council's changes to ORCP 58 to have been intended to codify a recognized practice of providing jurors with some instructions early in the trial to guide their understanding of the proceedings, without disturbing the traditional understanding that the trial court "charges" the jury at the conclusion of the case by reading the instructions necessary for the jury's information in giving its verdict. In this case, it is undisputed that the instructions that the trial court declined to reread at the end of the trial meet that description. Accordingly, it was error not to read those instructions aloud.

To be clear, we do not hold that the trial court erred in providing instructions at the beginning of the trial. On the contrary, what the state describes as "split" instructions *are required* by ORCP 58 B. Nor do the rules prohibit a trial court from engaging in some amount of duplication, reading certain instructions both at the beginning and at the end of a trial. There may be overlap, for example, between

instructions regarding the "legal principles that will govern the proceedings," ORCP 58 B(2), and instructions on "all matters of law necessary for [the jury's] information in giving its verdict," ORCP 59 B. We hold only that whatever instructions the court chooses to provide at the beginning of the trial must be in addition to, and not a substitute for, the complete oral statement that ORCP 59 B requires at the end.[9]

Having concluded that the trial court erred, we turn to whether that error was harmless. *State v. Ramoz*, 367 Or 670, 704, 483 P3d 615 (2021). An instructional error is not harmless "if it probably created an erroneous impression of the law in the minds of the jury" and "if that erroneous impression may have affected the outcome of the case." *Id*. at 704-05 (internal quotations omitted). In making that determination, we consider the instructions as a whole in the context of the evidence and the record at trial including the parties' theories of the case. *Id*.

The instructions that the trial court declined to reread at the close of the case were important instructions that protect defendants' constitutional rights. *See* Or Const, Art I, § 12 (right not to be compelled to testify against self); ORS 10.095(6) (providing that in criminal cases, jurors are to be instructed that "a person is innocent of a crime or wrong until the prosecution proves otherwise, and guilt shall be established beyond a reasonable doubt"); *State v. Sperou*, 365 Or 121, 133, 442 P3d 581 (2019) (acts that undermine the presumption of innocence may deprive defendants of a fair trial). Moreover, defendant did not testify in his own defense, and his defense consisted entirely of arguing that the state had failed to prove its case beyond a reasonable doubt, which makes the instructions concerning those matters particularly salient.

We also have noted the importance of research on so-called "recency bias," meaning that people "tend to

---

[9] We acknowledge that it is not uncommon for the parties to stipulate to the timing of instructions and for trial courts to act consistently with those stipulations, particularly in civil cases. This case does not call upon us to consider whether the parties may stipulate to something other than what ORCP 59 B requires, nor the effect that such a stipulation may have on a claim of error on appeal.

remember best, and be influenced most, by the latest event in a sequence[.]" *State v. Chitwood*, 370 Or 305, 318, 518 P3d 903 (2022). In other words, timing matters. We will not readily assume that an instruction read orally to the jury at the beginning of a trial will necessarily have the same effect as when the instruction is read immediately before deliberation.

Nor is it enough that the principles addressed by the omitted instructions were discussed by the parties themselves, in their closing arguments. A party's argument is not a substitute for instructions from the court.

> "The oral charge also performs a second, signaling function that cannot be replaced by a printout or a pamphlet. Jury instructions are not the judicial equivalent of a car manual or a cookbook. When an enrobed judge orally charges the jury, the jurors are impressed with the fact that they have been entrusted with the power to decide the defendant's fate. This oral, public ritual helps ensure that jurors recognize the enormity of their task and take that task seriously."

*United States v. Becerra*, 939 F3d 995, 1001 (9th Cir 2019) (internal quotation marks and ellipses omitted); *see also Ossanna v. Nike, Inc.*, 365 Or 196, 221, 445 P3d 281 (2019) (stating that "arguments put forth by an interested party are not adequate surrogates for controlling jury instructions given by the court"). For all of these reasons, we cannot conclude that the error in this case was harmless.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.